# The City of Philadelphia *versus* Given.

1. An elective officer, having the certificate of election, unless he has duly qualified is not entitled to the emoluments of the office pending a contest of his election.

2. Given was returned elected city commissioner and submitted the names of sureties which were by resolution of councils approved, and the solicitor directed to draw the official bond: the mayor vetoed the resolution. On complaint that Given was not duly elected it was decreed against him. He performed the duties of the office to the time of the decree. *Held*, that not having given bond he was not entitled to the emoluments of the office.

3. The Act of April 21st 1858 required the sureties to be approved by the "councils." It was not necessary that approval should be by a joint resolution requiring the signature of the mayor: a simple vote of approbation was all that was required.

4. The right to the emoluments of an office depends upon the title to the office. Per Thompson, C. J.

January 5th and 6th 1869. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the District Court of *Philadelphia :* No. 274, to January 1868.

This was an amicable action and case stated, in which John Given was plaintiff and The City of Philadelphia defendant, filed November 7th 1867. The case was as follows :—

" The plaintiff was elected on the second Tuesday of October 1862, to the office of city commissioner for the term of three years

from the 1st day of January 1863. He entered sureties for the faithful performance of the duties of said office.

" The plaintiff was returned elected to said office on the second Tuesday of October 1865, for the term of three years from the 1st day of January 1866. He immediately submitted the names of sufficient sureties to the councils for the faithful performance of the duties of said office. The councils of the city passed a formal resolution approving the same, and directed the city solicitor to draw the usual official bond, but the mayor returned said resolution to councils without his signature, alleging that he understood 'that the right to said office was then the subject of judicial inquiry.'

" The plaintiff performed the duties of said office from January to July 31st 1866, and this suit is brought to recover the salary therefor, to wit, for the period of seven months.

" A complaint was filed in the Court of Common Pleas on the 9th day of November 1865, setting forth that the said John Given was not duly elected to said office, which said complaint ended in a final decree that David P. Weaver had been duly elected to the said office of city commissioner instead of the said John Given; said final decree was made on the 2d day of August 1866, and the said David P. Weaver thereafter entered upon the performance of the duties of said office.

" If, upon the foregoing facts, the court shall be of opinion that the plaintiff is entitled to recover his salary for the time that he performed the duties of said office, then judgment to be entered for the plaintiff at the rate of $166.66 a month, to be assessed by the prothonotary; if otherwise, then for the defendants."

The court (Thayer, J.) entered judgment for the plaintiff.

The defendant removed the case to the Supreme Court and assigned the entry of judgment for error.

*J. Lynd*, for plaintiff in error.—I. To entitle the plaintiff below to recover compensation for his services as a public officer, he must show affirmatively that he was such officer both in law and in fact: Thurston v. Slatford, 1 Salk. R. 284; People v. Tieman, 30 Barb. 193; Patterson v. Miller, 2 Metc. (Ky.) 493; Riddle v. Bedford, 7 S. & R. 389; Keyser v. McKissam, 2 Rawle 139; Commonwealth v. Slifer, 1 Casey 23.

II. Has the plaintiff below shown such right?

The Act of April 21st 1858, § 4, Pamph. L. 386, provides, " that the city commissioners shall, before entering upon the duties of their office, give bond in such amount and with such sureties as shall be approved by councils, for the faithful performance of the duties of said office." Given did not execute or tender a bond.

*D. W. Sellers*, for defendant in error.

The opinion of the court was delivered, January 11th 1869, by
SHARSWOOD, J.—We are not required in this case to decide
the question whether the incumbent of an elective office, having
the certificate of the return judges that he was duly elected, but
whose election is contested and who eventually is ousted by the
adverse decision of the proper tribunal, is *de jure* as well as *de
facto* the officer pending the contest, and entitled therefore to the
legal emoluments of the office.

Nothing, however, is better settled than unless he has duly
qualified according to law, he is not so entitled: Riddle *v.* Bed-
ford, 7 S. & R. 389; Keyser *v.* McKissam, 2 Rawle 139; Com-
monwealth *v.* Slifer, 1 Casey 23. The plaintiff below, John
Given, who was duly returned by the judges of the general elec-
tion, on the second Tuesday of October 1865, as elected city com-
missioner of Philadelphia for the term of three years from the
1st day of January 1866, never did in fact qualify according to
law. By the 4th section of the Act of Assembly of April 21st
1858, entitled "A further supplement to the act incorporating
the city of Philadelphia," it was enacted "that the city commis-
sioners of the said city hereafter chosen, shall, before entering
upon the duties of their office, give bond in such amount and with
such sureties as shall be approved by councils, for the faithful
performance of the duties of the said office." It is agreed that
Mr. Given never did execute and deliver to the city such a bond.
But it is urged that he did all that he could do, and was unlaw-
fully prevented from completing his qualification. Conceding,
for the sake of argument, that prevention would be equivalent to
performance, do the agreed facts make out such a case? He
submitted the names of his proposed sureties to the councils, who
passed a resolution approving them, and directing the city soli-
citor to draw the usual bond; but the mayor returned the reso-
lution without his signature, and assigned as his reason "that the
right to said office was then the subject of judicial inquiry."
This, it is contended, was an unlawful act on the part of the
mayor; that he had no right to refuse to approve the resolution
on that ground.

If it be assumed that the resolution required the signature of
the mayor, it is evident that the sureties were not in fact approved
by the proper authorities. It does not appear that the mayor
ever considered and determined that question; on the contrary
he refused to consider it. If he had no right to withhold his
consent for the reason he gave, he might and could have been
compelled by mandamus to approve or disapprove. We have
issued such a mandamus to compel the councils to proceed in a
similar case, and by equal reason could such a remedy be invoked
against the mayor. But whatever may have been the practice, we
are very clearly of the opinion that under the Act of 1858 it was

[City of Philadelphia *v.* Given.]

not necessary that the approbation of the sureties should be by ordinance or joint resolution requiring to be signed by the mayor, or if he should veto it, to be passed by a vote of two-thirds of each council.   A simple vote of approbation by each body entirely fulfilled the requirements of the statute.   It was not at all essential that the bond should be drawn by the city solicitor.   Mr. Given ought then to have had an official bond drawn in the usual and proper form, and executed by himself, and the sureties who had been approved, and filed with the city solicitor, who is the officer to whom is intrusted the custody of all such documents. This Mr. Given did not do, and without it he had done nothing. The city was as much without the necessary security for the faithful performance by him of the duties of the office as if he had never taken the first step.   Had he become a defaulter, it cannot be pretended, and has not been, that his proposed sureties could have been held to any liability, even if it could be averred and proved as a fact that they had consented to become sureties. They had never executed the bond.   *Non constat* indeed that they ever would have executed it.   They might have withdrawn their consent at the last moment.   We cannot presume as facts, neither of which are in the case stated, that they did agree and for a valuable consideration, so that it is unnecessary to inquire whether the city could have enforced such an agreement.   The main object of the Act of Assembly, which was that the city should be secure from loss by an unfaithful city commissioner, would be defeated if we were to hold in such a case as this that the officer was a *de jure* incumbent, and entitled to the rights and remedies of such.

We are compelled, then, to apply to this case the principle heretofore settled, and to say in reference to Mr. Given what was said by the court in Commonwealth *v.* Slifer, 1 Casey 23, to General Bowman, " The performance of the duties of the officer before giving the security was prohibited by law.   The law must therefore refuse to aid him in compelling payment for services thus rendered against its directions."

> Judgment reversed, and non-judgment for the defendants on the case stated.


Concurring opinion by

THOMPSON, C. J.—I concur in opinion with my brethren that the judgment in the case must be reversed, but for different reasons from those expressed in the opinion just read.   The plaintiff below claims for salary as city commissioner for the period of about seven months.   His right to a salary was necessarily dependent on his title to the office to which the salary belonged.   It is admitted in the case stated, that he had no title to the office; that another was duly elected, and was *de jure* city commissioner

[City of Philadelphia *v.* Given.]

during all the period of these seven months for which he claims pay. This, a competent legal tribunal has conclusively determined. It did not determine that at the end of these seven months he ceased to be city commissioner, but that he was not elected at all at the October election of 1866. He was not, therefore, legally city commissioner for one moment of the time for which he claims salary. He could not claim on any ground but title. There is no such thing as allowing for services on any other principle. There is no *quantum meruit* in such cases. If there be no title there is no salary. It is true his acts were valid as to third parties. It is enough for them that he was *de facto* the city commissioner. They were not required to look beyond the actual incumbency. Necessity, in such cases, requires the recognition of validity in the acts of the officer *de facto*. In Riddle *v.* Bedford Co., 7 S. & R. 387, this was settled; and it was further settled beyond controversy, and the decision has never been questioned or modified, that "none but an officer *de jure* can successfully claim compensation for official services;" that while the office is valid as to strangers it is void as to the incumbent when there is no legal title. This was just the case here. There being no title in Given at all, the assumed title being void as to him, and this being the only possible foundation of a claim against the city for salary, the claim is necessarily invalid. Riddle, the treasurer *de facto* of Bedford county, could make valid sales of land, but it was held that he could not claim his costs from the county, for want of title. This in principle is just this case—no more nor no less.

Having no title to the office, it seems illogical to hold that he forfeited his right to salary because he did not properly qualify by giving the required security. He was not authorized to give security. That was a consequence of a legal election. A bond was not required of a party not duly elected, and in my judgment would not, if it had been given, have bound the sureties. They undertake for legal officers, not for illegal incumbents. But be this as it may, it may be safely asserted that unless Given was duly elected city commissioner, he was not bound to give security. For not offering to do a vain thing, in or out of time, I see no solid ground for saying that his salary is to be denied on that ground. If I could come to the conclusion that any result could properly be deduced from his failure to give bond, it would be because I believed him bound to tender it. But how can such a conclusion follow the judicial announcement that he was never elected, and therefore no bond·was legally demandable? Without enlarging, however, I am for reversing the judgment below on the grounds stated above, and not because of the want of security.