## Commonwealth ex rel. Shoemaker *v.* Thomas et al. (Cannon, Appellant).

20

Argued October 6, 1937.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ernest F. Walker,* for appellant.

*C. Randolph Myers,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

Three members of the Board of Viewers brought mandamus proceedings against the Commissioners and the Controller for fees and expenses. It was alleged that they had been appointed by the judges of the Court of Common Pleas; their services had been performed, bills presented according to law, and their approval refused. The county commissioners answered that they were not required to act until the controller had countersigned the bills; this defense was sustained. The controller's return raised the following defenses: that one of the relators is not a freeholder of the county and therefore not entitled to payment; that the relators charged more for the services than they were entitled to for the time they had spent, and failed to recognize fractions of a day in computing the time spent; and that the three members of the board owed more money to the county in taxes than the county owed them for their services. The court below rejected these defenses and, without taking testimony or allowing a jury trial, directed the controller to approve the bills. The controller appeals.

Appellees contend that the approval of the fees and costs of viewers is a ministerial matter involving no discretion on the part of the controller.

The General County Law of May 2, 1929, P. L. 1278, Art. IV, Sections 341 and 349, from which the appellant derives his power, broadly states that the controller is to have the general supervision and control of the fiscal affairs of the county, that he is to "scrutinize, audit and decide on all bills, claims and demands whatsoever against the county," that he may investigate whether

"the supplies or services for which payment is claimed have been furnished or performed under legal authority," and that he shall certify such claims as he finds legally due to the commissioners for payment. The corresponding fiscal officers of other political subdivisions have similar powers under similar statutes.* These statutes are not very precise in delimiting the powers and duties of the fiscal officer.

It has been frequently stated that some of the statutory duties of the controller or auditor are ministerial, whereas others are discretionary. The expressly granted power to investigate is a quasi-judicial one indicating the controller is more than a mere rubber stamp or adding machine. On the other hand, he is not an overlord of the county (see *Thayer v. McCaslin*, 314 Pa. 553, 557), nor has he the power to conduct investigations into every matter that may incidentally affect the fiscal affairs of the county. He cannot refuse a claim because "the county's financial condition and the nature of the

---

* Substantially identical is the Act of June 27, 1895, P. L. 403, Sec. 8, which was once applicable to all counties, but now applies only to counties of the first class. The provisions for city controllers in cities of the first and second classes differ in only minor respects from the statutes governing county controllers, the most important difference being that if for any reason the warrant should not be approved, the controller should notify the proper department of that fact: Act of March 7, 1901, P. L. 20, art. VIII, sec. 1; Act of June 25, 1919, P. L. 581, art. XII, sec. 3. For the consolidated City of Pittsburgh the legislature has provided similar powers, with the additional provision that no warrant shall be issued for the payment for services until the performance thereof has been certified by the head of the department and the controller may require additional evidence and conduct such an investigation as he may deem necessary: Act of April 18, 1929, P. L. 573, art. VII, secs. 1 and 7. As for third class cities and townships, there are similar provisions allowing the fiscal officer to require evidence that the amount claimed is due, and that the services have been performed according to law and according to the contract: Act of May 23, 1889, P. L. 277, art. IX, sec. 4; Act of June 24, 1931, P. L. 1206, art. XI, sec. 1104.

times do not in his opinion justify the expenditures required" *(Erie Anti-Tuberculosis Society v. Willis,* 322 Pa. 97), or the expenditure was unnecessary *(Commonwealth ex rel. v. Irvin,* 110 Pa. Super. Ct. 387), or was unreasonably large *(Thomas v. Leidich,* 27 D. & C. 320).

Here the controller resisted payment because he alleges one of the viewers was not a "freeholder." This is disputed. When the claim of the viewer was presented he was entitled to a presumption that he was a de jure officer. The controller is not entrusted with the duty of determining the legal qualification of every county officer and employee who presents a claim for compensation. The right to pass on the qualifications of employees and officers is, in most cases, entrusted to officers or boards or to a court who appoint them, and the question as to whether such bodies or tribunals have heeded statutory direction in deciding qualifications is a judicial one to be determined generally by quo warranto *(Brinton v. Kerr,* 320 Pa. 62; *Sewickley Township School District's Appeal,* 327 Pa. 396), and cannot be raised by the county controller in a proceeding of this nature, especially where the right to review the appointment is expressly entrusted to some other body.

In mandamus to pay fees and salaries the defense that the relators did not possess certain qualifications has been entertained. Thus in *Com. ex rel. Bowman v. Slifer,* 25 Pa. 23, failure to file a bond as required by law was set up as a defense to mandamus and sustained. We have held that one who is merely a de facto and not a de jure officer cannot claim compensation for official services: *Riddle v. County of Bedford,* 7 S. & R. 386; *Com. ex rel. Bowman v. Slifer,* supra; *County of Luzerne v. Trimmer,* 95 Pa. 97; *Jones v. Dusman,* 246 Pa. 513; *Moritz v. Luzerne County,* 283 Pa. 349. This has been held in this State despite the fact claimant performed the services and no other person asserts a claim to the office *(Riddle v. County of Bedford; Jones v. Dusman,* and *Moritz v. Luzerne County,* all supra);

other jurisdictions have reached a contrary result. But in none of these cases was the question as to the proper procedure raised by the parties or considered by this Court. We adhere to our long established ruling that unless another remedy is provided for by statute, quo warranto is the exclusive and proper one to determine title to public office. Here, Section 173 of Art. III of the Act of May 2, 1929, as amended, gives the court the power to appoint and determine the qualifications of appointees both before and after appointment. The court is empowered to determine "summarily" the facts, and, as it is not conceded that any ground for disqualification exists, the viewer was entitled to the presumption that the court obeyed the law and his holding was that of a de jure officer. The controller could not review the act of the court, which has summary jurisdiction to declare vacancies by reason of subsequent disqualification. Here was a court, part of whose function was to determine the qualifications of the appointees. This viewer may have been qualified when appointed and lost his qualification thereafter. Freeholder is not a fixed, determined status. It has a number of incidents. The question of his qualifications may not properly be raised in a mandamus proceeding. The statute grants to the court the power of appointment, and the provision for determining vacancies is an all-inclusive power by which the qualifications named in the act may be determined, except by quo warranto, the historically recognized method of testing title to public office.

The controller asserted the bills of appellees were improper, that they included claims for services not actually rendered. The court should have heard this objection; it could not be summarily disposed of. This does not mean that the controller has, in every case, the power to determine the validity of a claim. When the legislature designates officials or other bodies to determine whether services of employees or of contractors have been performed, and such a power has been exer-

cised, a controller can attack such a finding only for fraud or mistake. Thus a city council allowed the claim of an attorney, and the controller refused to approve it without an itemized bill; this court on mandamus held that, since the amount had been adjusted by a city council having jurisdiction, the controller could not refuse payment: *Com. ex rel. v. Tice,* 272 Pa. 447. The same is true as to municipal contracts where officials have exercised legislative authority to decide whether a contract has been properly performed. In *Com. ex rel. v. Pittsburgh,* 204 Pa. 219, 206 Pa. 379, the award of a final arbiter, the public works official, determining whether the work was according to contract, was held to be conclusive. The same may be said of *Com. ex rel. v. Larkin,* 216 Pa. 128, and *Thayer v. McCaslin,* supra. See *Com. v. Phila.,* 176 Pa. 588.

Where no such power is given to other officials or boards, or where the power is given but not exercised, the conclusion reached in *Skelton v. Lower Merion Township,* 318 Pa. 356, 361, as to township auditors, applies to controllers, who may investigate fully and pass on the claim. See *Poole Engineering and Machine Company v. Adamson,* 17 D. & C. 468.

The controller's defense that the services were not performed is not foreclosed simply because he failed to state that he had made an investigation. Assuming such investigation necessary, the court overlooked the strong presumption in our law that the investigation was made: *Hibbs v. Arensberg,* 276 Pa. 24. See also *Wilson v. New Castle City,* 301 Pa. 358.

The question is raised as to whether the viewers should have recognized fractions of a day in charging for their services, it being the contention that a statutory provision for per diem compensation does not entitle a public officer to collect a full day's pay when the work consumes only a fraction of the day: Act of May 2, 1929, P. L. 1278, Article III, section 171, as amended by the Act of June 9, 1931, P. L. 401, Section 1. The estab-

lished rule is that where a public officer is paid on a per diem basis, fractions of a day are not recognized. While the question seems never to have arisen in this State, it is practically the universal rule. In *United States v. Erwin,* 147 U. S. 685, 686, the question arose as to a district attorney who was to receive $5 per day. The court said: "If his attendance before the court be necessary, he is entitled to his per diem, though it may only be necessary to remain" a short time. And in *Stetler v. McFarlane,* 230 N. Y. 400, 409, where the objection was that the official had performed services for only a part of a day, the Court of Appeals of New York, speaking through Judge CARDOZO, said: "We think the statute means that a supervisor acting in good faith, shall be paid for every day upon which service is rendered in the performance of delegated duties," rejecting the theory that the pay might be apportioned and making the test whether the official *acted in good faith and did not charge for trivialities.* The authorities supporting this view are collected in 1 A. L. R. 274. See *Albright v. County of Bedford,* 106 Pa. 582, 588. If there is evidence of abuse on the part of the official, the result may be otherwise, but there must be more than a mere conjecture that the work could have been done in one day. or a few days, or in a shorter time than was charged for. See *Mansel v. Nicely,* 175 Pa. 367. This is the proper construction to be placed on the statute providing for appellees' fees, there being nothing in the statute which indicates a contrary result.

The third defense, that the relators owed more to the county in taxes than was due them for their services, should not have been rejected. The Act of April 28, 1899, P. L. 97, Sec. 2, gives the controller the right to deduct from claims against the county all moneys due to the county for taxes. The Act of April 21, 1937, P. L. 316, which authorizes the county to set off tax claims against salaries, up to 20 per cent and no more, of the compensation due, applies only to "current" salaries

due any public officer or employee. The word "current" is plain in meaning; and as the compensation or fees due to these officers are not current but intermittent, such claims would come under the Act of 1899 and not the Act of 1937. Moreover, the effective date of the Act of 1937 was September 1st (see Sec. 1 of the Act of May 17, 1929, P. L. 1808, as amended June 10, 1935, P. L. 293, Sec. 1), and the mandamuses issued before that date. This case comes under the Act of 1899.

Judgment reversed with a procedendo.