Cooke, Appellant, *v.* Roberts.

Argued May 22, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John Y. Scott,* for appellant.

*John P. Wanner,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellees.

562

OPINION BY MR. JUSTICE LINN, July 3, 1939:

This appeal is from the refusal of a mandamus to require the Auditor General to approve and the City Treasurer of Philadelphia to pay $6,614.59, claimed by appellant for services as de facto mercantile appraiser from January 5, 1938, to March 24, 1938.

The circumstances in which appellant came into the office are stated in *Com. ex rel. v. Marinelli et al.*, 330 Pa. 82, 198 A. 623, Cooke, one of the respondents in that case, being the present appellant. In the brief filed on his behalf, his counsel recognizes that by the accepted rule in this state the emoluments are annexed to the office and not to the person, and that, accordingly, the salary belongs to the officer de jure and not to the incumbent de facto: *Com. ex rel. Shoemaker v. Thomas*, 328 Pa. 19, 195 A. 103; *Jones v. Dusman*, 246 Pa. 513, 92 A. 707. He contends, however, that "because of equitable considerations and the unusual circumstances of this case, an exception to this rule should have been recognized by the learned court below." We think the general rule must be applied. The circumstances said to be exceptional grow out of the other legal proceeding referred to; it was in quo warranto calling on appellant to show his authority to act as appraiser. Court of Common Pleas No. 1 of Philadelphia held that he had no title to the office and entered judgment of ouster. Instead of abiding by that judgment, he appealed to this court and, in addition, applied for and obtained an order superseding the ouster. When he did that, he made an election; he acted with knowledge that if the judgment against him was ultimately affirmed, he, having meanwhile been an incumbent de facto, would have rendered services subject to the rule that he could not recover the compensation which the law attached to the office and which was therefore payable to the de jure officer. He was not required to continue in the public service; he acted voluntarily. Such election on his part cannot be held to create "equitable considera-

tions, and unusual circumstances" which would justify the court in setting aside a general rule of law designed, inter alia, to save the public treasury from paying twice for the same service. Appellant's contention is not sustained by anything decided in *Suermann v. Hadley*, 327 Pa. 190, 193 A. 645; the assessors were not parties to that proceeding; their right to office was not at issue.

Order affirmed at appellant's costs.

DISSENTING OPINION BY MR. JUSTICE BARNES:

I cannot concur in the majority opinion because I am convinced that appellant is entitled to the compensation which he seeks for the services rendered by him, pending the determination of his appeal to this Court from the judgment of ouster entered against him in the court of common pleas.

While it is true that in a number of our cases it has been stated that "one who is merely a de facto and not a de jure officer cannot claim compensation for official services" *(Jones v. Dusman*, 246 Pa. 513, 515; *Com. ex rel. Shoemaker v. Thomas*, 328 Pa. 19, 23), an examination of the decisions of this Court discloses that this rule is not without exception. In fact there is no decision in this state which expressly determines the question here presented.

Appellant occupied for a time the office of mercantile appraiser for the city and county of Philadelphia under color of appointment. There is no doubt that he performed the duties of the office during the period for which he claims compensation. Under such circumstances he would have been entitled, prior to his ouster, to compel the payment of compensation by mandamus. In *Com. ex rel. Shoemaker v. Thomas*, supra, it was held that title to an office cannot be placed in issue as a defense to such proceedings. While this is not, strictly, an exception to the general rule, because it proceeds upon the theory that an incumbent is entitled to the presumptive status of an officer de jure

until deprived thereof by a competent adjudication, nevertheless it affords a practical illustration of a situation in which a de facto officer may assert the right to payment for his services. And, in *Jones v. Dusman,* supra, despite the dictum that only an officer de jure can recover for his official services, it was held that a municipality cannot recover compensation paid to a de facto officer under a claim of right, although the de jure officer may do so.

Assuming, therefore, that appellant could have maintained proceedings to enforce the payment which he seeks during the time the action of quo warranto was pending in the common pleas court, let us examine the effect of that action upon his rights. The case of *County of Luzerne v. Trimmer,* 95 Pa. 97, supplies a pertinent analogy. There this Court decided that the fees of an elective office belong to the certified incumbent during the pendency of an election contest, and until its determination by a final decree on the merits, even though the contest is resolved against him. This was the question intentionally left unanswered by Chief Justice SHARSWOOD in *Philadelphia v. Given,* 60 Pa. 136, 138. Therefore, if we followed in this the case of an appointive office the rule laid down by this Court for an elective office, there would be no doubt that appellant would be entitled to compensation so long as the ouster proceedings were pending, and until a final decree was entered on the merits.

Did the judgment of the court of common pleas in the action of quo warranto terminate appellant's incumbency of the office of mercantile appraiser? The answer to this question is to be found by reference to the statutes governing such proceedings, and also by taking into consideration the effect of the order of supersedeas granted by this Court, pending the determination of the appeal. The Act of June 14, 1836, P. L. 621, Section 11, provides for the entry of judgment of ouster against a defendant in quo warranto. Such a judgment

is not self-executing in this state, for Section 13 of that Act provides as follows: "If judgment of ouster and exclusion, as aforesaid, be given against any defendant, execution thereof shall be had by a writ of injunction. . . . ; such injunction shall recite the judgment of the court, and shall enjoin the defendant, or defendants, from exercising the office, franchise, privilege or power mentioned therein, and obedience thereto may be compelled by attachment and sequestration, in like manner as in other cases of injunction."

Before the execution of the judgment of ouster, appellant filed his appeal to this Court *(Com. ex rel. v. Marinelli et al.,* 330 Pa. 82). This appeal under the law[1] did not operate as a stay of the judgment. Appellant therefore applied to this Court for a supersedeas, reciting in his petition that his removal from office would disturb and interfere with the appraisal of mercantile taxes, and handicap the Board of Mercantile Appraisers in its disposal of tax appeals. In the interest of the orderly conduct of such appraisements, *this Court after due deliberation granted the writ* on March 2, 1938, thereby continuing the appellant in office, pending the ultimate determination of the case. This we had the power to do under the Acts of June 14, 1836, P. L. 621, and May 19, 1897, P. L. 67. Section 12 of the latter Act, as amended, providing as follows: "In appeals from judgments and decrees in . . . quo warranto . . . the appeal shall not operate as a supersedeas, *unless so ordered by the court below or the appellate court or any judge thereof either by general rule or special order, and upon such terms as may be required by the court* or judge granting the order of supersedeas."

The supersedeas was not granted to indulge appellant, but in the best interest of the state and the tax-

---

[1] See Section 15 of the Act of June 14, 1836, P. L. 621; Section 12 of the Act of May 19, 1897, P. L. 67, as amended by Section 2 of the Act of May 11, 1927, P. L. 972.

payers. It was in effect a direction to appellant to continue to perform the duties of the office of which he was still the incumbent. *For its duration it accomplished a preservation of the status quo ante, pending the determination of the appeal: New Brighton etc. R. R. Co. v. Pittsburgh, etc. R. R. Co.,* 105 Pa. 13, 24. By analogy to the Trimmer case, supra, appellant was therefore entitled to compensation during the period his ouster was pending. In that case the defendant officer's rights pending appeal were concluded by the decision of the lower court. The review was by certiorari only, and no supersedeas was interposed. *Here, however, the rights of appellant were preserved pending a full review upon the merits.*

Appellant's continuance in office did not merely enable him to perform the duties of a mercantile appraiser; it *compelled* him to do so. The supersedeas order was deliberately granted by this Court to permit him to participate as a member of the Board in the completion of its pressing task of making appraisements. During this period it was obligatory upon him to do this work. There can be no doubt that he relied upon the supersedeas order of this Court as safeguarding his right to remuneration for the performance of these duties.

In view of these circumstances can it justly be asserted, as the majority opinion holds, that "when he did that [applied to this Court for the order of supersedeas] he made an election; he acted with knowledge that if the judgment against him was ultimately affirmed, he, having meanwhile been an incumbent de facto, would have rendered services subject to the rule that he could not recover the compensation which the law attached to the office. . . ."?

This question is definitely answered in our decision in *Suermann v. Hadley,* 327 Pa. 190, and it affords, in my opinion, a clear mandate for the reversal of the court below. In that case we took express cognizance of a

situation almost identical with the one here presented. During the course of the annual real estate tax assessment in the city of Philadelphia, the legislature passed three Acts to reorganize the entire system of assessment. The Acts purported to terminate the offices of the then members of the Board of Revision of Taxes, and to abolish the office of assessor. This Court held that the legislation attempted to remove the members of the Board in violation of the constitutional mandate, and enjoined any interference with the performance of their duties.

The question of the validity of the provision abolishing the office of assessor was not raised, but the gravity of the situation compelled us to make provision for the carrying on of the assessment. Accordingly we said (p. 203): ". . . if the services of all the assessors are dispensed with as proposed in Act 'A,' it would be utterly impossible to finish the task on which they are engaged. Interruption of, or interference with, the assessment at the present stage of its progress would doubtless result in a grave and serious breach in the financial life of the city. It would imperil its credit and greatly injure its people." In further discussing the importance of permitting the assessors to continue their work, it is stated (p. 204): "The assessors, as lawful *or de facto officers* with their knowledge of the details of assessment, will thus be able to complete their work *and act in appeals taken after their returns to the Board,* as required by law." *Although the assessors were not parties to the action,* the final judgment of this Court contained the following order (p. 208): ". . . the current work of assessment shall continue to completion, and the real and personal property assessors of Philadelphia *shall be paid their salaries during their continued employment.*"

The majority opinion says "the assessors were not parties to that proceeding; their right to office was not at issue." That is true, but can there be the slight-

est doubt that this Court intended that they should be paid their salaries *regardless* of that question? It is clear that there we recognized that equity and the public interest required that compensation be paid to the assessors, even as de facto officers, in order that the work of assessment should not be interrupted.

Upon what basis can the facts here present be distinguished from the situation there presented? As stated, at the institution of the quo warranto proceedings appellant was engaged in making mercantile appraisements. The public interest demanded that this work proceed without interruption. Appellant, like the assessors in the Suermann case, supra, was familiar with the details of the work; like them, he and his fellow Board members were to act in appeals from their appraisals. The task of the Board would have been immeasurably complicated by his removal. *Recognizing all this we issued a supersedeas continuing him in office for the pendency of the appeal.* His case is, therefore, even stronger than that of the assessors in the Suermann case, who were not parties to the record. He faithfully performed his share of the work of the Board, which made 50,651 appraisals during the period involved in this appeal. Appellees concede the justice of his claim[2] and there is no dispute as to the amount of compensation to which he would be entitled for the work performed. In a case where the equities are so clear as here, it should require a strong precedent, indeed, to defeat recovery. Not only has no such precedent been found, but those of our decisions closely analogous support appellant's contentions. Under these circumstances, I am of opinion that it is manifest injustice to deny his claim.

---

[2] In appellees' brief it is conceded: "When this case was argued before the Dauphin County Court, the Department of Justice recognized the equities of the appellant's claim to compensation and we still recognize the equities of this claim."

For these reasons I am compelled to record my dissent to the opinion of the majority of the Court. I would reverse the judgment of the court below, and here enter judgment upon the record for appellant in the sum of $6,614.59, the stipulated amount of his compensation, with interest and costs.