## Cassol v. Keck

*Scales & Shaw*, for plaintiffs.

*R. Herbert Buchman*, for defendant.

KEIM, J., April 4, 1966.—This case is before the court en banc by way of an action of mandamus, literally speaking, a test case which will solve the payment of viewers on various bills as submitted over a period of many months by various viewers for views made and completed on various properties condemned under the Urban Redevelopment Law and views completed for public utility concerns.

After various consultations with counsel for all party litigants, it was agreed that the case would be submitted to the court for disposition by a written stipulation, which is as follows:

1. Robert Y. Cassol is an individual residing in Franklin Township, Westmoreland County, Pa.; Thomas Preston is an individual residing in the City of Monessen, Westmoreland County, Pa.; and Ralph Wilps is an individual residing in the City of Greensburg, Westmoreland County, Pa.

2. Said plaintiffs, Robert Y. Cassol, Thomas Preston and Ralph Wilps, are members of the Westmoreland County Board of Viewers, having served as members of the Westmoreland County Board of Viewers for several years, and were members of the Westmoreland County Board of Viewers on November 30, 1962.

3. On November 30, 1962, by order of this honorable court, said plaintiffs, Robert Y. Cassol, Thomas Preston and Ralph Wilps, were appointed from the County Board of Viewers to serve on a board of view on a case filed in the Court of Common Pleas of Westmoreland County, Pennsylvania, bearing the following caption:

"IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNA.

"IN RE: In the Matter of Appointment of Viewers for Certain Parcels of Land in the City of Monessen

Condemned by Redevelopment Authority of City of Monessen, being the property of John Holet and Mary Holet, his wife.

"NO. 271 July Term, 1962"

4. Said plaintiffs, Robert Y. Cassol, Thomas Preston and Ralph Wilps, set Monday, February 18, 1963, at 2:00 P.M. as a date for view and hearing in said case at July Term, 1962, no. 271, Court of Common Pleas of Westmoreland County, Pa., and performed all duties necessary therein and thereto.

5. On June 18, 1963, said plaintiffs, Robert Y. Cassol, Thomas Preston and Ralph Wilps, filed the report of the board of viewers in the said case and completed all necessary requirements of their office as members of the county board of viewers with respect to said case.

6. As a result of said services, plaintiffs are entitled to be paid the following sums of money: Robert Y. Cassol, $75; Thomas Preston, $40, and Ralph Wilps, $60.

7. Defendant Leonard B. Keck is the Controller of the County of Westmoreland.

8. Defendant Robert A. Kilgore is a duly elected Commissioner of Westmoreland County, Pa.

9. Defendant Jay W. Kromer is a duly elected Commissioner of Westmoreland County, Pa.

10. Defendant Smith McKee is a duly elected Commissioner of Westmoreland County, Pa.

11. The County of Westmoreland is a political subdivision situate entirely within the Commonwealth of Pennsylvania.

12. Defendants Emil Spadafore, Albert Lami, Roderick J. Wiseman, John F. Janosik and Joseph M. Dudas, are the duly appointed members of the Board of the Redevelopment Authority of the City of Monessen.

13. Defendant, the Redevelopment Authority of the City of Monessen, is, and at all times relevant hereto was, a public body, and a body corporate and politic

created and organized in accordance with the provisions of the Urban Redevelopment Law of May 24, 1945, P. L. 991, as amended, 35 PS §1701, et seq., exercising public powers of the Commonwealth as an agency thereof, within a redevelopment area located within the corporate limits of the City of Monessen, Westmoreland County, Pa., including the power to acquire by eminent domain real property for the public purposes set forth in the aforesaid act, in the manner provided by said act.

14. The Redevelopment Authority of the City of Monessen, in accordance with section 12 of the Urban Redevelopment Law of May 24, 1945, P. L. 991, as amended, is, and at all times pertinent hereto, was authorized to exercise the right of eminent domain in the manner provided by law for the exercise of such right by the City of Monessen, a city of the third class, in which said authority was organized to operate.

15. Defendant City of Monessen is a third class city, located in the County of Westmoreland and Commonwealth of Pennsylvania.

16. Defendant Hugo J. Parente is the Mayor, and defendants David Victoria, Stephen Sinchak, Andrew N. Kritsky and Anthony Mascetta are the duly elected Members of Council of the City of Monessen.

17. The eminent domain proceedings involved in the case at July Term, 1962, no. 271, in the Court of Common Pleas of Westmoreland County, Pa., in which said viewers served, arose out of a condemnation proceeding instituted by the Redevelopment Authority of the City of Monessen, which right of eminent domain was exercised by said authority in the manner provided by law for the exercise of such right by cities of the third class, as set forth in The Third Class City Code of June 23, 1931, P. L. 932, as amended.

18. Payment of plaintiffs' fees as viewers has been refused by all of the defendants.

19. Plaintiffs have no adequate remedy at law.

In addition to the above stipulation, we might add that a check of the records in the Clerk of Courts Office in and for Westmoreland County and the Prothonotary Office in and for Westmoreland County indicates that all viewers concerned and now presently serving on the board of viewers have been appointed in accordance with existing statutory laws in effect at the time of their appointment.

Much emphasis has been placed on the Act of August 9, 1955, P. L. 323, section 2409, 16 PS §2409, by counsel for the county controller and the county commissioners which provides under section (b): "The cost of said viewers and all court costs incurred, including all advertising and notices in connection therewith, shall be paid by the county, except that when the right of eminent domain has been exercised by the county acting with the corporate authorities of any city, borough, town or township, then all costs shall be borne equally by the county and city, borough, town or township". In reviewing this statute, it is to be noted that this particular section applies to views where the county is a party thereto, and only then when they are acting in conjunction with another municipality. In reviewing this statute and the Urban Redevelopment Law, as found in 35 PS §1704, we find that the redevelopment authority of the city or county shall not be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function, and for this reason, we are of the opinion that the Urban Redevelopment Law definitely excludes the Municipalities Act as cited and, further, that the Municipalities Act is not applicable either in retrospect or prospect insofar as the Urban Redevelopment Law is concerned, and particularly not applicable insofar as appointment, payment, etc., of viewers is concerned. The Urban Redevelopment Law, sec. 4(a), as found at 35 PS §1704, provides: "There are hereby created

separate and distinct bodies corporate and politic, one for each city, and one for each county of the Commonwealth, as herein defined. Each such body shall be known as the Redevelopment Authority of the city or the county, as the case may be, but shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function. Each such Authority shall transact no business or otherwise become operative until and unless a finding is made as hereinafter provided in this section". It is to be noted that whether or not the authorities were properly formed in accordance with the act is not at issue in this particular instance.

Review of the law of eminent domain and particularly the costs of proceedings, as found in 14 Standard Pa. Prac., we find that prior to 1911, the compensation of viewers and taxable costs in eminent domain proceedings varied in accordance with various statutes, particularly the statute of 1907; however, the Act of 1911 expressly provided as to how and under what conditions the viewers were to be compensated. The Act of June 23, 1911, P. L. 1123, sec. 4, provides as follows:

"In Counties having more than one million inhabitants each member of said board of viewers shall receive an annual salary of five thousand dollars, payable quarterly out of the treasury of the proper county.

"In counties containing less than one million inhabitants, each member of the said board of viewers shall receive, and be paid out of the treasury of the proper county, the sum of not less than two dollars or more than five dollars for each day actually and necessarily spent by him in the performance of the duties of his office, as the judge of the proper county may determine. The same shall be paid monthly, under such conditions as to verification of time of employment as may be prescribed by the rules and regulations

which shall be made in that behalf by the courts of the respective counties".

This act has been amended and supplemented from time to time, but we do not believe it to be by coincidence that the new Eminent Domain Code, as adopted after a lengthy study by a joint state government commission and adopted in 1964 at a special session of the legislature on June 22, P. L. 84, sec. 805, 26 PS §1-805, practically reiterated and reestablished the intent of the Act of 1911, except as to precise wording and salaries, the new act, providing as follows: "In counties of the first class the compensation of viewers shall be fixed by the city council. In counties of the second class, compensation shall be established by the salary board. In all other classes of counties, the minimum fee per day for services rendered shall be thirty-five dollars ($35.00) or in such other amount in excess thereof as may be fixed by the salary board or their compensation shall be such annual salary as may be fixed by the salary board". It is to be noted that a comment was made by the joint state commission, which says, "For the purpose of compensation, the viewers are to be considered as employees of the court".

The authorities indicate that the Act of 1911 corrected all of the conflicting and disorganized provisions pertaining to the compensation of viewers appointed under the various condemnation statutes. This act fixed a given sum for each day of service which varied for the various classes of counties and also provided mileage expenses. It is not doubted that the Act of 1911 did repeal and supplant all other provisions for the compensation of viewers. This act reveals clearly that the viewers are county officers and their compensations must be paid by the county and that neither the condemning body nor petitioner for the appointment of the viewers needs to pay or provide security for the payment of the viewers' compensation. As we

previously stated, we do not believe the similarity of the new act under the Eminent Domain Code and the provisions spelled out in the Act of 1911 were by coincidence, but, on the contrary, do believe that the section heretofore recited under the new Eminent Domain Code clearly spells out what has been the law since the Act of 1911.

We also find case law which substantiates our view that the viewers are county employes. In the case of Commonwealth ex rel. Shoemaker v. Thomas, 328 Pa. 19, and particularly page 23, we have a case where the controller resisted payment because he alleges one of the viewers was not a "freeholder"; this fact being disputed, the court said: "When the claim of the viewer was presented he was entitled to a presumption that he was a de jure officer. The controller is not entrusted with the duty of determining the legal qualification of every county officer and employee who presents a claim for compensation. The right to pass on the qualifications of employees and officers is, in most cases, entrusted to officers or boards or to a court who appoint them, and the question as to whether such bodies or tribunals have heeded statutory direction in deciding qualifications is a judicial one to be determined generally by quo warranto . . . and cannot be raised by the county controller in a proceeding of this nature, especially where the right to review the appointment is expressly entrusted to some other body". This case also makes a distinction between a de facto and a de jure officer, the de facto officer not being able to claim compensation for official services. The case cited also specifically provided that where the legislature designates officials or other bodies to determine whether services of employes or of contractors have been performed, and such power has been exercised, a controller can attack such a finding only for fraud or mistake, and goes on to cite vari-

ous instances where claims have been refused by the controller, even though approved by the cognizant authority. In this particular instance, the viewers involved, and claims of other viewers not included in this claim, were appointed by the court, and their claims or bills for compensation approved by the court, and unless it is shown that the bills have been falsified or erroneous, we do not believe that either the controller or the commissioners have the right to contest the payment under the existing laws.

We have reviewed the two Fayette County cases cited frequently in Pennsylvania Standard Practice and the Pennsylvania Law Encyclopedia, and believe that the opinions of Judge Umbel and Judge Van Swearingen represent the views of this court.

In the case of Franklin Township Road, 40 Pa. C. C. 484 (1913), at page 487, Judge Umbel said, in part: "It will be observed, the act of June 23, 1911, contains no provision regarding the petitioners reimbursing the county treasury the amount paid the viewers as is found in the act of 1907, and our conclusion is that the acts are in conflict and inconsistent and it was the legislative intent that the act of 1911 should repeal not only the act of 1907 but all other acts inconsistent therewith. If such were not the case how could or would it be determined in counties having a population of more than one million where the viewers receive a salary of $5,000 per year, what amount should be paid into the county treasury by the petitioners as the pay of the commissioners or viewers, and again where different viewers are on different cases, in both classes of counties, heard and tried the same day, how would the viewers' pay be apportioned and charged to the petitioners?"

In the case of Fayette County v. Baltimore & Ohio Railroad Co., 41 Pa. C. C. 557, Judge Van Swearingen said: "The act of June 23, 1911, P. L. 1123, established

in each of the counties of the state a board of viewers of not less than three nor more than nine members, the number to be fixed by the court, and provided that on petition for appointment of viewers within the scope of the act, the court shall appoint a board of view of three members from among said board of viewers. Section 4 of the act, as amended by the Act of May 29, 1913, P. L. 386, provides that in counties having more than one million inhabitants each member of the board of viewers shall receive an annual salary of $5,000, payable quarterly out of the treasury of the proper county, and that in counties containing less than one million inhabitants each member of the board of viewers shall receive and be paid out of the treasury of the proper county the sum of $5 for each day actually and necessarily spent by him in the performance of the duties of his office, together with the sum of five cents per mile for each mile actually and necessarily traveled by him in the performance of his duties, which shall be paid monthly under such conditions as to verification of time of employment as may be prescribed by the rules and regulations which shall be made in that behalf by the courts of the respective counties". The court further stated, "And no provision whatever is made by the act of 1911 or by the amendment to that act of 1913, for a recovery by the county of the amount expended by it in the payment of viewers in any case. By the last section of the act of 1911 all acts or parts of acts inconsistent therewith are repealed". In his opinion, the judge cited Reber's Petition, 235 Pa. 622, wherein it was held by the Supreme Court that ". . . the act of June 23, 1911, P. L. 1123 establishes a new system and is complete within itself insofar as its scope extends and needs the aid of no other statute to give it effect, and that if the imposition of the costs of maintaining the system upon the counties shall prove to be burdensome the remedy

is to be sought from the legislature and not in the courts".

Because the Act of 1911 neither expressly, nor by implication, authorizes the counties or the state to recover any part of the payments made by them to the viewers appointed by the court from any of the party litigants in proceedings before the viewers, we are of the opinion that plaintiff is entitled to recover from county defendants in the present case.

It has not been denied that the services rendered by the viewers were in accordance with their official duties as officer de jure. As stated in the case In re Smolak et ux., 89 D. & C. 130, the court held, "There is nothing to indicate that either of the parties to the proceedings before the viewers should be liable to reimburse the county for the amounts paid by the county to the viewers and stenographers". To conclude otherwise would be to say, in effect, the salary of the judge and the court stenographer, which is paid by the government, in each case could be made a part of the bill of costs in every viewers' proceeding, and we do not think that this was intended under the Act of 1911 or under the new Eminent Domain Code.

It is our opinion that the viewers are de jure employes of the county, and under the acts mentioned, and particularly the new Eminent Domain Code Act, which reenacted in effect the Act of 1911, that the county is liable for viewers' compensation when acting under an appointment by court order in all views, unless expressly exempted under statutory authority pertaining to situations regulated by a specific statute designating payment to be made from other sources.

In our opinion, the City of Monessen and other cities involved and the redevelopment authorities are not liable for payment of viewers' compensation.

ORDER OF COURT

And now, April 4, 1966, this matter having come

before the court en banc, after due and careful consideration, the county controller is hereby directed to pay each of the viewers appointed in this case the sum indicated in their bill for services in the performance of his or their duties as viewers, and further ordered and directed that the outstanding bills of viewers held in abeyance awaiting disposition of this case be paid as approved by the court.