## Colish *v.* Goldstein, Appellant.

Argued June 14, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

reargument refused September 29, 1961.

Before BROWN, JR., P. J., without a jury.

*F. Hastings Griffin, Jr.,* with him *George J. Miller,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Charles M. Solomon,* with him *Franklin A. Wurman,* and *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY WOODSIDE, J., September 12, 1961:

This is an appeal by the defendant in an assumpsit action from a judgment for $1500 entered against him in favor of an architect after a trial before a judge without a jury. The appellant asks for judgment n.o.v., or in lieu thereof, a new trial.

The evidence establishes that Morris Goldstein, the defendant, purchased a tract of land along City Line Avenue, Philadelphia, for the purpose of erecting an office building thereon. He was told that Aaron Colish, an architect, "might do [him] some good."

Thereupon, he telephoned Colish, who took him to lunch and discussed with him the construction of a building on the premises which he had purchased.

Colish showed him a colored rendering which Colish had prepared for another client who was considering the erection of a building on the same premises, discussed the general area and showed him an aerial map of it, discussed the zoning requirements and suggested that changes unfavorable to the erection of an office building were contemplated, discussed the cost of the building, which was to be approximately $1,500,000, and an architect's fee which was to be $100,000, advised him that the dimensions of the lot which he had bought included half of two streets and that the usable part was not as large as Goldstein had thought it was, and discussed other similar matters. Colish lent the colored rendering and the aerial map to Goldstein to show to prospective partners and tenants. The map was subsequently used in a brochure with which Goldstein hoped to obtain tenants for his proposed building.

A short time later, Colish saw Goldstein on the premises and further discussed the building with him. Later, after Goldstein had employed another architect to construct the building, Colish asked for the return of his exhibits and sent a bill to Goldstein for $5500 itemized as follows: $1000 for color rendering of proposed building; $1000 for illustrated and developed aerial view of City Line showing proposed building; $3000 for use of aerial view of City Line in brochure, and $500 for consultation time—2 hours at $250 per hour. Goldstein returned the aerial view, and refused to pay Colish, who then brought suit. It is not clear what happened to the colored rendering.

After receiving the testimony, the court below concluded that Colish had rendered services and furnished exhibits for which he should be paid. The court considered the value of these to be less than the plaintiff claimed, and entered judgment for $1500.

When a case is tried by a judge without a jury, his finding on the facts has the force and effect of the

verdict of a jury. *Moore v. W. J. Gilmore Drug Co.*, 131 Pa. Superior Ct. 349, 350, 200 A. 250 (1938). For purposes of a review of the propriety of the finding, all the evidence and proper inferences therefrom favorable to the successful party must be taken as true and all unfavorable to him rejected. *Levick Building & Loan Association v. Collins,* 112 Pa. Superior Ct. 434, 436, 171 A. 300 (1934).

The court below found that the defendant assured the plaintiff that he was the architect to be used for the project. As there is evidence to support this, we must accept it as a fact. Colish testified, and again we must accept it as true, that he would not have given the defendant the information and exhibits had he not had the assurance from the defendant that he was to serve as the architect in designing an office building for a fee of $100,000.

The plaintiff gave valuable information to the defendant, and his aerial photograph montage was used in a brochure which was prepared for prospective tenants of the defendant.

As stated by President Judge FRANCIS SHUNK BROWN, JR., in his opinion for the court below: "Where property or services have been obtained under circumstances where reason, common sense and justice dictate that payment should be made therefor, the law has been able to provide a remedy despite the fact that no formal contract had been entered into between the parties. 'Express contracts are, where the terms of the agreement are openly uttered and avowed at the time of the making: as, to deliver an ox or ten loads of timber, or to pay a stated price for certain goods. Implied are such as reason and justice dictate; and which, therefore, the law presumes that every man undertakes to perform. As, if I employ a person to do any business for me, or perform any work, the law implies that I undertook and contracted to pay him as much as his

labour deserves. If I take up wares of a tradesman without any agreement of price, the law concludes that I contracted to pay their real value.' Blackstone, 2 Comm. 443. Implied contracts eventually became the term applied to those situations where there was actually a mutual intention to contract, while 'fictions of law adapted to enforce legal duties by actions of contract, where no proper contract exists, express or implied' became known as constructive contracts. Hertzog v. Hertzog, 29 Pa. 465, 468.

"More recently the doctrine has developed to the extent that recovery is permitted on the basis of 'a "quasi-contractual relationship" between the parties. A quasi contract arises where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but even in spite of any intention he might have to the contrary. A quasi contract, which is a *fictional* contract, is not to be confused with a contract implied in fact, which is an *actual* contract, and which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of surrounding circumstances.' Cameron v. Eynon, 332 Pa. 529, 532.

"Certainly, after centuries of thought and experience, the law has advanced beyond the point where one may appropriate the fruits of another's ingenuity and labor by means of chicanery, cunning, or deception, and be free of liability in the absence of an appropriate document complete with seals and ribbons or an oral arrangement containing some magic words. Thomas v. R. J. Reynolds Tobacco Co., 350 Pa. 262, 266. Consequently, there was no error in the finding that plaintiff was entitled to recover damages from defendant."

The defendant denied that there was any discussion between the plaintiff and him about an architect or architect's fee, and that he went to see the plaintiff because he thought "he might do me some good."

The defendant would be liable for the services rendered by the plaintiff, if he knew or understood, or, as a reasonable person, should have known or understood, that the services were being performed with the expectation that he would pay for them. 98 C.J.S., Work & Labor, §8. As a reasonable person, Goldstein should not have expected Colish, a stranger to him, to furnish the information and services as a favor without any thought of pay, if as the defendant contends, the matter of employing an architect was not involved in the interview.

The question is not what inferences we would draw from the evidence, but whether there was evidence from which the trial court could infer liability. We think the trial judge could infer from the evidence that the plaintiff intended to be paid for his services, that he rendered them, that their fair value was $1500, and that under all the circumstances, the defendant should have expected the plaintiff to intend to be paid.

We have examined the record and find no reasons to grant a new trial.

Judgment affirmed.

WATKINS, J., dissents.