442 A.2d 304

BIRCHWOOD LAKES COMMUNITY ASSOCIATION,
INC., Appellant,

v.

Betty COMIS, Henry Lichte and Rose Lichte, His Wife, John
Deshewski and Concetta Deshewski, His Wife, Mae Genberg,
a/k/a Mary Genberg, Stanley Matejek and Bernice Matejek,
His Wife, Louis Mendy and Viola T. Mendy, His Wife, Walter
McCague and Margaret P. McCague, His Wife, Lawrence
McMahon and Helen McMahon, His Wife, Leonard C. Rade-
maker and Barbara Rademaker, His Wife, Alan R. Tulp, Anne-
liese Zassoda, Jack Sweetman and Edith H. Sweetman, His
Wife, Gabriel Passarelli and Marie Passarelli, His Wife, Mi-
chael McCaul and Catherine McCaul, His Wife, Eva A. Frodge,
Dennis Winters and Margaret Winters, His Wife, Leonard M.
Trubia, Herbert Anstett and Elizabeth Anstett, His Wife, John
Farley and Winifred Farley, His Wife, Robert Barlett, Bernard
Guddahl and Rose Guddahl, His Wife, Philip Lamendola and
Rose Lamendola, His Wife, John Leechan and Katherine Lee-
chan, Thomas Harney and Mary Harney, His Wife, Margaret
Jonas, Emil Sartori and Dolores Sartori, His Wife, Thomas
Stefanelli, Charles Talmage, George Wiltshire and Elsie M.
Wiltshire, His Wife, Joseph J. Lorentz, Jr. and Catherine V.
Lorentz, Robert Newsbaum and Frieda Newsbaum, His Wife,
Stanley J. Kasprzak and Stella Kasprzak, His Wife, Jad Bargh-
out and E. Lynn Barghout, His Wife, Thomas Angelo and
Mabel Angelo, His Wife, and Antonio Manzo.

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Feb. 26, 1982.

78

Randolph T. Borden, Hawley, for appellant.

Marshall E. Anders, Stroudsburg, for appellees.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

VAN der VOORT, Judge:

All-American Realty Company was the developer of Birchwood Lakes, a residential recreational community. Birchwood Lakes Community Association, Inc. (hereafter referred to as the Association) is a non-profit corporation which is the successor in interest to the developer. The Association performs the services essential to the maintenance of the community. To pay for such services the Association assesses and collects "community dues" as its predecessor had done. For the fiscal years of 1975 and 1976 the Association assessed the dues to be $85.00 a year per lot, based on the anticipated expenses of operating the community.

The appellees are thirty-six (36) of an approximate 2,500 property owners within the community. Appellees refused to pay dues in excess of those listed in their deeds, which prompted the current litigation. The lower court found the deeds to be controlling and construed them against the Association. The court sitting en banc, denied Association's exceptions and judgment for appellees was entered. This appeal followed.

The issue presently before this court is whether the covenants contained in appellees' deeds restrict the amount of dues that the Association may assess. Two different provisions were placed in the various deeds, of which both are substantially similar. Accordingly, we will only reprint the first of the two in its entirety.

Each 25′ lot and in case of Lake Front Lots, each 20′ lot, included in the agreement shall be subject to an annual lien or charge of $10.00 and the Grantee, his, her or their heirs, successors, executors, administrators and assigns agree to pay to the Grantor its successors and assigns the

sum of Ten ($10.00) Dollars to each of such lots, annually on the first day of May hereafter, for beach privileges, whether the same are exercised or not.[1] The title to all land designated as beach is expressly retained by the Grantor. The Grantee, his, her or their heirs, successors, executors, administrators, and assigns further agree that the use of said beaches is subject to approval for the use for membership in Birchwood Lakes Country Club, Inc., hereinafter provided, and in the case of a guest or member of the family, provided they shall first be approved for honorary membership in Birchwood Lakes Country Club, Inc., and to compliance with the rules and regulations from time to time promulgated by the Grantor, its successors and assigns, it being understood that the charge for beach privileges in addition to constituting a lien against each lot included in this agreement, shall constitute a debt which may be collected by suit in any court of competent jurisdiction, and upon the conveyance of any land described herein, successive owner or owners shall, from time of acquiring title, be held to have covenanted and agreed to pay the Grantor, its successors or assigns, all charges, past or future, as provided for in this paragraph. In no event, however, shall the annual lien and charge for Beach Privileges be less than $30.00 per annum.

The second provision is distinguished by its inclusion of the following clauses.

In no event, however, shall the annual lien and charge for Beach Privileges be less than $45.00 per annum or such additional sum as may be determined by the Grantor, its successors and assigns. The failure to pay the annual lien on due date shall give to the Grantor, its successors and assigns, the option of preventing the access and use of the aforementioned facilities of the said Country Club and the same shall be enforceable by mandatory injunction.

 Before actually addressing the merits of the opposing contentions we must first resolve a preliminary matter.

1. The second provision, drafted later in time, set the annual lien at $15.00.

Appellees attempt to frame the provisions in question as restrictive covenants in the hope that a standard of review more favorable to their position will be applied. Appellants also refer to the clause as restrictive covenants. A restrictive covenant may be defined as:

> A covenant restricting or regulating the use of real property or the kind, character, and location of buildings or other structures that may be erected thereon, usually created by a condition, covenant, reservation, or exception in a deed, but susceptible of creation by contract not involving transfer of title to land and by implication. 20 Am J2d Cov §§ 165 et seq.

Ballentine's Law Dictionary, 3rd Ed. We fail to see how the above provisions restrict or regulate the use of appellee's property. A review of the cases that appellees rely upon demonstrates the difference between the current covenants and restrictive covenants. *Mishkin v. Temple Beth El of Lancaster*, 429 Pa. 73, 239 A.2d 800 (1968) involved an easement for light and air. *Parker v. Hough*, 420 Pa. 7, 215 A.2d 667 (1966) concerned a height restriction. In *Ratkovich v. Randell Homes, Inc.*, 403 Pa. 63, 169 A.2d 65 (1961), there was a limitation to single family houses. While in *Siciliano v. Misler*, 399 Pa. 406, 160 A.2d 422 (1960) the covenant prohibited the operation of a supermarket. And in *Jones v. Park Lane for Convalescents, Inc.*, 384 Pa. 268, 120 A.2d 535 (1956) the property was restricted to residential uses. In such situations, the restrictive covenants not being favored in law, will be strictly construed against the grantor.

The present case is more akin to *Leh et al. v. Burke*, 231 Pa.Superior Ct. 98, 331 A.2d 755 (1974). That case involved deeds which provided for the apportionment of costs if and when an adjoining road was paved. There the court did not apply the harsh standard applicable to restrictive covenants. In contrast, for non-restrictive covenants:

> [T]he rule is that if an agreement is not clearly expressed, an effort is made by the court interpreting the language to give effect to the intention of the parties as expressed at the time. "Where the language of a deed or a restric-

tion is not clear, then in order to ascertain the intention of the parties its language should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made." *Parker v. Hough*, 420 Pa. 7, 12–13, 215 A.2d 667, 670 (1966).

*Id.*, 231 Pa.Superior Ct. at 104, 331 A.2d 755.

 Appellees' confusion stems in part from their misconception over what a covenant running with the land is. "The test for determining whether a covenant runs with the land is whether it was so intended by its creators." *Philadelphia Fresh Food v. Levin & Co.*, 239 Pa.Superior Ct. 287, 295, 361 A.2d 886, 890 (1976). The covenants here at issue were clearly intended to bind the successors in interest of all grantees and therefore were intended to follow the title or in other words run with the land. As previously demonstrated, not all covenants running with the land are necessarily restrictive covenants.

Appellees do not challenge the Association's authority to collect the assessments, nor its authority to expend such sums collected for the maintenance of the development.[2] See generally, *Indian Mountain Lake Civic Association v. Coyle*, 283 Pa.Superior Ct. 545, 424 A.2d 943 (1981). Nor is their complaint technically, with an uncertain assessment, as the case was in *Leh v. Burke*, supra, or *Holiday Pocono Association v. Benick*, 7 Pa.D & C 3d 378 (1978). Rather, their situation, as they frame it is more analogous to *Wilkins v. Lake Meade Prop. Own. Assn.*, 60 Pa.D & C 2d 670 (1972). *Wilkins* involved an attempt by an owners association to change the assessment plan contained in the memberships' deeds. The court found such was impermissible.

However, from our vantage point, we do not believe the present controversy is similar to *Wilkins*. Instead the issue in controversy is not whether an assessment plan can be changed, but rather how the assessment covenants are to be interpreted. For rules of construction we must refer back .

---

**2.** Appellees do complain of expending the assessment for maintaining and improving the recreational facilities, which they contend they do not utilize.

to the principle enunciated in *Leh,* supra, and "give effect to the intention of the parties." To give effect to the first covenant in question we must reconcile two apparently inconsistent and confusing clauses. First, lot owners must pay an annual lien and charge of ten ($10.00) dollars for beach privileges. Then subsequently the covenant indicates the annual lien and assessment for Beach Privileges shall be no less than thirty ($30.00) dollars.

We cannot tell from such covenant what the intent of the grantor was. The provision could be interpreted in different ways, i.e., setting a minimum, setting a maximum or setting a minimum and a maximum (as the lower court held). After reviewing the deeds in their entirety we are still unable to determine the parties intent. "If a person grants a portion of his property to another and the grant is susceptible of more than one interpretation, the words of the grant are to be construed most strongly against the grantor and more favorably to the grantee (cites deleted) unless . . . the grantee drafted the grant . . . ." *New Charter Coal Co. v. McKee,* 411 Pa. 307, 191 A.2d 830 (1963). Therefore, the Association, relying upon the first of the two covenants, may not collect in excess of thirty ($30.00) dollars.[3]

However, the additional provision in the second covenant presents a different situation. The inclusion of the clause "or such additional sum as may be determined by the Grantor, its successors and assigns", demonstrates that the express intent of the parties was that the grantor or its successors could assess beyond forty-five ($45.00) dollars per annum. Therefore, those appellees having the second provision in their deed are bound by the covenant to pay such assessment.

The portion of the judgment pertaining to the second covenant must be vacated with directions to enter judgment in favor of the Association.

The remainder of this Opinion is only applicable to a decision on the first covenant. Appellant, alternatively argues that the assessments may be justified under theories

3. Appellees do not question appellant's right to collect $30.00.

of quasi contract or implied contract. We must first distinguish the various contractual theories. A quasi contract, also referred to as a contract implied in law imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement when one party receives an unjust enrichment at the expense of another. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *Thomas v. R. J. Reynolds Tobacco Co.*, 350 Pa. 262, 38 A.2d 61 (1944); *Central Storage & Transfer Co. v. Kaplan*, 37 Pa.Commonwealth Ct. 105, 389 A.2d 711 (1978). A contract implied in fact is an actual contract arising when there is an agreement, but the parties intentions are inferred from their conduct in light of the circumstances. *Elias v. Elias*, 428 Pa. 159, 237 A.2d 215 (1968); *Colish v. Goldstein*, 196 Pa.Superior Ct. 188, 173 A.2d 749 (1961).

If a plaintiff fails to prove a cause of action on an express contract, he may not then attempt to prove his case in quasi contract, unless his complaint originally, or as amended sets forth a cause of action in quasi contract. *Zawada v. Pa. System Board of Adj.*, 392 Pa. 207, 140 A.2d 335 (1958); *Luzerne Township v. Fayette County*, 330 Pa. 247, 199 A.2d 327 (1938); *Witten v. Stout*, 284 Pa. 410, 131 A. 360 (1925). In the current case, the complaint averred two causes of action, the first count, in contract, was based on the covenant in the deeds; and the second count, sounding in unjust enrichment, pleaded a quasi contract. Therefore, appellant could properly proceed on a theory of quasi contract. However, appellant's complaint does not set forth a cause of action in contract implied in fact. We find that the rationale in *Zawada* and the other cases listed above apply equally well to contracts implied in fact. If a plaintiff fails to succeed in his claim based on an express contract he may not then attempt to demonstrate a contract implied in fact unless such has been averred in the complaint. Appellant did not allege contract implied in fact. Therefore, we may not decide whether such an approach has any merit.

Appellees contend that as appellant has relied on the express covenant contained in the deeds it may not also

argue quasi contract. Unjust enrichment is not applicable where the relationship among the parties is based on an express agreement. *Third Nat. B. & T. v. Lehigh Val. Coal Co.*, 353 Pa. 185, 44 A.2d 571 (1945), *Roman Mosaic & Tile Co. v. Vollrath*, 226 Pa.Superior Ct. 215, 313 A.2d 305 (1973). Appellant responds that the covenants clearly pertain only to an annual charge for "beach privileges" and do not cover the maintenance of roads and other Association owned facilities. The lower court after noting that private communities were dependent on such assessments, went on to hold that "recreational amenities" did not qualify as an essential service. (Opinion p. 12) The trial court improperly overlooked the fact that the covenants clearly provided for payment for beach privileges, though the actual amount is uncertain. The only question that remained before the court was if such fees for beach privileges are insufficient to maintain the roads and other facilities may the association assess beyond the amounts listed in the covenants under a theory of quasi contract.[4]

Our research has failed to uncover any cases where a homeowners' association has attempted to base its assessment on a theory of quasi contract. It is this court's belief however that the present situation is not appropriate for the remedy of quasi contract. An "appellant must show that [appellees] wrongfully secured or passively received a benefit that it would be unconscionable for [appellees] to retain." *Scott v. Purcell*, 264 Pa.Superior Ct. 354, 367, 399 A.2d 1088, 1095 (1979), quoting *Roman Mosaic & Tile Co. v. Vollrath*, supra. There is no claim that appellees wrongfully secured the maintenance of the community. Nor do we believe that such property owners passively received such services. Instead, the services were performed and accepted in the belief that the covenants were controlling; the property owners

4. Association does not seriously argue that such fees collected under the covenant may only be expended for maintenance of the beach. Instead the parties appear to agree that the use of such sums for general maintenance is permissible; accordingly, we need not discuss such issue.

did not passively accept such knowing that they were mistakenly provided.

■ In concluding, we are aware of the potential hardships which this decision may have on Birchwood Lakes. However, such a result was avoidable. *Without deciding* that a cause of action in contract implied in fact may exist, appellant here failed to allege such a contract in its complaint. And finally, we note that the two different covenants employed need not be enforced in the same manner as a grantor may impose different restrictions and obligations upon different grants. See *Neff et al. v. Gorman et al.*, 303 Pa. 186, 154 A. 293 (1931).

As to those defendant property owners whose deeds contain the covenant to pay the association "such additional sum as may be determined by the Grantor, its successors and assigns" judgments are entered in favor of the association in the amount of its claims and as to those defendant property owners whose deeds do not contain the covenant to pay "such additional sum as may be determined by the Grantor, its successors and assigns" judgments are entered in favor of the association in the basic amount of $30.00 per lot per annum as provided in said deeds. The case is remanded to the court below to determine the amount of the respective judgments in accordance with this Opinion.