552 A.2d 306

M. Imogene HARTZFELD, Appellee,

v.

GREEN GLEN CORPORATION, Treasure Lake Property Owners Association, Inc., Recreation Land Corporation, Their Successors and Assigns.

Appeal of TREASURE LAKE PROPERTY OWNERS ASSOCIATION, INC., and Recreation Land Corporation, Their Successors and Assigns, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 26, 1988.

Filed Jan. 5, 1989.

514

Michael P. Yeager, Clearfield, and Scott V. Jones, Du Bois, for appellants.

William C. Kriner, Clearfield, for appellee.

Before OLSZEWSKI, DEL SOLE and KELLY, JJ.

DEL SOLE, Judge:

Following certification by the trial court and grant of a Petition for Allowance of an Interlocutory Appeal, Appellants have presented this appeal from an order dismissing their preliminary objections. Appellants ask us to determine whether all the necessary parties have been joined as defendant's in Appellee's quiet title action. Since we find that there exists certain indispensable parties who should have been joined as defendants, we reverse the trial court's order and dismiss Appellee's complaint without prejudice.

Appellee, who acquired property in the Treasure Lake Subdivision, filed a complaint claiming title by adverse possession to a strip of property located between her deeded premises and the lake. Named as defendants were Appellants, whom Appellee claimed in her complaint were "all previous owners in the chain of title" for the subject property. Appellants responded by filing Preliminary Objections claiming that all lot owners in the Treasure Lake Subdivision own such an interest in this property that they are necessary and indispensable parties. In support of their position Appellants presented three documents to the court which they claimed created for all the lot owners in the Subdivision a property interest in a 150 foot strip of land surrounding the lake, a portion of which is the subject of this action. The trial court found that the three documents and the restrictions contain therein, "cannot be applied to [Appellee's] property" since she acquired her property prior to the existence of the documents. The court went on to rule that even if the restrictions contained in the documents do apply in this case, they grant the lot owners no more than a privilege to use the disputed area, "but grant no specific individual ownership right ... that would require each of them to be named as parties of this action."

Since it is important to determine the interest possessed by all lot owners in the subdivision, we will examine the documents and their applicability to the various parties before ruling on the ultimate issue of whether Appellee failed to join all necessary and indispensable parties.

■ First we conclude the trial court erred in ruling that the three documents are inapplicable. The trial court based its ruling upon the fact that these instruments were executed subsequent to Appellee's purchase of the deeded property and therefore, she was not subject to the contents of the documents. The trial court's analysis misses the point. The documents presented by Appellants must be examined to determine what rights, if any, have been granted to other lot owners in the disputed property. Whether or not Appellee is subject to the terms of these documents is irrelevant. At issue is whether these documents grant others rights to the disputed property, which rights Appellee must extinguish before prevailing in her claim of ownership.

■ Appellee acquired her lot in the Treasure Lake subdivision from Appellant, Recreation Land Corporation's, predecessor in title, John E. DuBois Jr. and Rene Handley DuBois. Title to the disputed property was not passed by deed and remained with the grantors. A few years later Mr. and Mrs. DuBois entered certain "Stipulations and Conditions" with Clear Run Farms Lake Rene (owned by Mr. and Mrs. DuBois) and "all subsequent purchasers of lots" in the plan. It included the following provision:

> All persons who are the owners of lots as set forth in the aforementioned Lot Block Plan, and their invitees, shall have the privilege of using the lands surrounding Lake Rene (now Treasure Lake), for the purpose of boating swimming, fishing, hunting and other recreational activities, including the 150 foot wide strip of land surrounding Lake Rene as owned, and will be retained by the owners
> . . .

The lot owners' usage was said to be conditioned upon particular regulations, such as a prohibition against tree or shrub removal, against boat launching and picnicking on the 150 foot strip of land. An annual maintenance charge was also to be assessed to each lot owner. Mr. and Mrs. DuBois reserved the right to amend these rules or add additional

rules and make these regulations a condition precedent to the use of the lake and surrounding lands.

Six years later after Mr. and Mrs. DuBois sold their interest in Clear Run Farms Lake Rene to Treasure Lake, Inc., the new owner executed a "Declaration of Restrictions." In a document filed a few months later Mr. and Mrs. DuBois agreed that the Declaration of Restrictions of Treasure Lake, Inc. are to act as amendments and additions and be incorporated into their original "Stipulations and Conditions."

In the instrument executed by Treasure Lake, Inc. additional regulations were added regarding such things as the size and design of structures which would be permitted on lots sold in the Subdivision. It prohibited certain general activities on any lots in the Subdivision. It also established "Treasure Lake Property Owners Association, Inc.," an Appellant herein, and required all those acquiring title to be a member of the Association. No mention of the 150 foot strip of land is specifically found in the Declaration of Restrictions. However, Appellee calls our attention to the following provision:

> The ownership of the recreational amenities within the Property which may include but shall not be limited to lakes, dams, marinas, beaches, lake access tracts, golf courses, tennis courts, swimming pools, clubhouses and adjacent clubhouse grounds, and campgrounds shall be in Declarant or its successors or assigns and the use and enjoyment thereof shall be on such terms and conditions as Declarant, its successors or assigns, shall from time to time license; provided, however that any or all of such amenities may be conveyed to the Association, which conveyance shall be accepted by it, provided that same is free and clear of all financial encumbrances.

The declaration also provides that "all of the Restrictions shall run with the land and shall be binding on all parties having or acquiring any right, title or interest in and to the real property or any part or parts thereof subject to such Restrictions." It further sets forth the following:

> The Restrictions and agreements set forth herein are made for the mutual and reciprocal benefit of each and every lot in the Subdivisions and are intended ... to create privity of contract and estate between the grantees of said lots, their heirs, successors and assigns, and shall, as to the owner of each such lot, his heirs, successors or assigns, operate as covenants running with the land for the benefit of each and all other lots in the Subdivision and their respective owners.

Finally the Declaration recites that the restrictions imposed "are amendments and additions to all restriction heretofore imposed on any of the Property or lots sold therefrom by Declarant or its predecessors in title."

Appellee asserts that these documents do not grant any property rights to the lot owners in the Subdivision. She points to the use of the words "privilege" and "license" in the documents and maintains that the lot owners were merely granted a "privilege" or "license" to use the 150 foot area. Referring to the fact that a license is a mere personal privilege to perform certain acts on the land of another and conveys no interest or estate in the land, *Hennebont Co. v. Kroger Co.*, 221 Pa.Super. 65, 289 A.2d 229 (1972); *Thompson v. Com. Dept. of Highways*, 214 Pa.Super. 329, 257 A.2d 639 (1969), Appellee reasons that the lot owners had no interest in the property retained by the grantor and therefore are not proper parties to her quiet title action. We cannot adopt Appellee's position.

It appears clear from the portions of the instruments quoted above that the grantors who retained an interest in the 150 foot strip of land sought to convey some interest in that land to the Subdivision lot owners. The lot owners purchased their lots with the understanding and agreement that they would enjoy use of this property. We do not believe the term license contained within the documents was used to signify that no property rights were being created in favor of the lot owners. The first instrument refers to "all persons who are owners of lots" and therefore appears to bind not only the lot owners who would initially take title

subject to these provisions but also their successors in interest. The Declaration of Restrictions clearly indicate that the lot owners' heirs, successors and assigns will take subject to the restrictions and benefits contained within the instrument; and, as noted, these provisions constituted additions to those written in the first Stipulation executed by Mr. and Mrs. DuBois. In addition, the Declaration clearly states that the provisions contained therein are covenants running with the land.

Many covenants which run with the land are considered to be restrictive covenants. Indeed many of these appear in the Stipulation and Declaration of Restrictions which prohibit or limit certain uses of each lot owner's land. However, "not all covenants running with the land are necessarily restrictive covenants." *Birchwood Lakes Community Ass'n v. Comis*, 296 Pa.Super. 77, 84, 442 A.2d 304, 307 (1982). In the *Birchwood Lakes* case property owners within a residential recreational community bought an action to interpret language contained in their deeds regarding assessments. The deed provides, in part, that certain lots:

shall be subject to an annual lien or charge of $10.00 and the Grantee, his her or their heirs, successors, executors, administrators and assigns agree to pay to the Grantor its successors and assigns the sum of Ten ($10.00) Dollars ... for beach privileges whether the same are exercised or not. The title to all land designated as beach is expressly retained by the Grantor.

In interpreting this language in light of a latter clause indicating that an annual assessment for beach privileges was to be no less than $30.00, the court first ruled that these clauses constituted covenants running with the land. "The covenants here at issue were clearly intended to bind the successors in interest of all grantees and therefore were intended to follow the title or in other words run with the land." *Id.*, 296 Pa.Superior Ct. at 84, 442 A.2d at 307. *See also: Indian Mountain Lake Civic Ass'n v. Coyle*, 283 Pa.Super. 545, 424 A.2d 943 (1981) (where an annual due

and assessment to property owners, their executors or assigns were covenants running with the land.)

In contrast with a personal covenant, a covenant which is to run with the land ordinarily must affect the land and be intended to pass with it. *Caplan v. City of Pittsburgh*, 375 Pa. 268, 269, 100 A.2d 380, 383 (1953). "Since the test for determining whether the promise runs with the land is whether it was so intended by its creators, an indication that the grantees' heirs or assigns are considered bound by its terms is generally decisive of the question." *Leh v. Burke*, 231 Pa.Super. 98, 331 A.2d 755, 760 (1974), (citation and footnote omitted). Here such an intent is evident from the documents.

■ Because we have determined that the lot owners who took title subject to the provisions of the Stipulations and Declaration of Restrictions do possess an interest in the land which Appellee claims title to by adverse possession, we must next consider whether that interest is of such a nature so as to require these lot owners to be named as parties to this action.

Rule 2227(a) of the Rules of Civil Procedure provides: "Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants." Pa.R.C.P. 2227, 42 Pa.C.S.A. This rule is applicable where substantive law provides that an interest is joint and so connected with the claims of the litigants that no relief can be granted without impairing the rights of the litigants. *Mitchell v. Purdential Property & Cas. Ins.*, 346 Pa.Super. 327, 499 A.2d 632, 636 (1985). The inquiry into whether a party is indispensable to the plaintiff's action must be viewed from the perspective of protecting the rights of the absent parties and not from the perspective of whether the joinder of a party to the action would make the matter more difficult to litigate. *E–Z Parks, Inc. v. Philadelphia Parking Authority*, 103 Pa.Commw. 627, 521 A.2d 71, 75 (1987).

In the context of a declaratory judgment action, where the court cannot act unless "all interested persons are

joined as parties," the necessity to join landowners and club members was considered in *Moraine Valley Farms v. Connoquenessing Woodlands Club, Inc.*, 296 Pa.Super. 277, 281, 442 A.2d 767, 769 (1982). In *Moraine,* the plaintiffs, lot owners in a resort plan, sought to have declared invalid the by-laws of a club which was created to provide recreational facilities for the lot owners. The deed which conveyed property and a clubhouse to the Club reserved to original owners, their successor and assigns and all future lot owners the right to use the club facilities. The court ruled that all those owning property to which the alleged right to membership inured, and all persons holding regular and transferable memberships might be adversely affected by the declaration so that a decree could not be formulated without these parties present. The court in *Moraine* went on to comment that the plaintiff had not asserted that they were acting as representatives of a class. It found that "absent certification of the Club and/or the Appellants as a class representing the interests of property owners and Club members not parties to this action, we conclude that the Chancellor did not abuse his discretion in declining to hear the matter in a declaratory judgment proceeding." *Id.*, 296 Pa.Superior Ct. at 281, 442 A.2d at 770.

Although the instant case does not arise from a declaratory judgment proceeding, we find some guidance in the *Moraine* case. Here, it is clear from the recorded documents that the original grantors and their successors in title intended for the current and future lot owners of the Treasure Lake Subdivision to enjoy certain rights in the 150 foot strip of land surrounding the lake. Appellee, who wishes to claim title to a portion of this land, must join these lot owners for they are indispensable parties. When acquiring title to their respective lots these lot owners secured rights in addition to the raw land itself. In making their purchase they had the right to rely upon the recorded representations of those rights. A potential decision in Appellee's favor would certainly adversely affect those rights.

Although we note that there are approximately 5000 residential building lots in the Treasure Lake Subdivision, and that all lot owners are required, according to the Declaration of Restrictions to be members of Treasure Lake Property Owners Association, Inc, an Appellant herein, Appellee has not sought to join the Owners Association as a representative of a class. *See* Pa.R.C.P. 1701 *et seq.*, 42 Pa.C.S.A. Appellee's Complaint only asserts that the Association along with the other defendants were "previous owners in the chain of title." Absent such certification or joinder of all interested and necessary parties this action cannot go forward.

Order of the trial court reversed. Appellee's complaint dismissed without prejudice. Jurisdiction relinquished.