**Fawn Lake Forest Association Inc. v. Tussel**

C.P. of Pike County, no. 1360-1993.

*Robert F. Bernathy,* for plaintiff.
*Randall W. Turano,* for defendant.

THOMSON, *P.J.,* April 3, 1995—This case is before the court on stipulated facts supplied by the parties. Trial briefs have been submitted and this case is now ripe for adjudication.

## FACTS

The material facts are adopted from the stipulation of facts submitted by the parties. Fawn Lake Forest Association Inc. is a duly incorporated nonprofit corporation organized under the laws of Pennsylvania. The association consists of an affiliation of property owners in a private

community called Fawn Lake Forest, located in Lackawaxen Township, Pike County, Pennsylvania. The defendant, Ronald Tussel, trustee of the Arthur C. Kujawski Irrevocable Trust, is the owner of lots 84 and 85 of section VIII, and lot 101 of section I, in Fawn Lake Forest.

Prior to the defendant's purchase of the two lots on December 9, 1989, the association adopted bylaws authorizing the association to levy fees and assessments according to the declaration of restrictive covenants recorded July 16, 1969. The declaration stated that the covenants were to run with the land for a period of 90 years from 1969. At the time Tussel purchased the lots, the deed and the recorded original plat map referred to lots 84 and 85 as separate and distinct lots. On December 21, 1988, the Lackawaxen Township Board of Supervisors approved the defendant's application to combine lots 84 and 85 into one lot for assessment valuation purposes.[1]

The association continued to levy two separate assessment fees on lots 84 and 85 during the years 1990-91, 1991-92, 1992-93, and 1993-94. Tussel paid the assessment fee on the two lots in 1990-91. However, the defendant now asserts that he should not have to pay any assessment fee on lot 84 because it has been combined with lot 85 into one lot.

---

1. The dates were adopted from the parties' stipulation of facts. That the defendant purchased the lots on December 9, 1989, and had approval to combine them on December 21, 1988 (almost a year before the lots were purchased) is not explained, nor at issue, by the parties.

On December 7, 1993 the association filed a complaint in the court of common pleas seeking recovery of delinquent assessment fees unpaid by the defendant. On May 6, 1994 the court ordered that the matter be set before an arbitration board. The arbitration board found for the association on the delinquent fees owed on lots 85 and 101. However, the arbitrators refused to award the association any fees due in connection with lot 84. On August 17, 1994, the association filed an appeal to this court, said appeal being the case now before us.

## DISCUSSION

### Levying of Assessment Fees

The court's decision is limited to the issue of whether the combination of two lots into one lot under the authorization of the township board of supervisors exempts the owner of the lots from paying assessment fees imposed on all of the lots by the association's declaration of restrictive covenants which are referenced to in the deed and the association's bylaws.

The briefs submitted in this case by the opposing parties fail to cite a factually similar case. Research by the court has also failed to reveal a case on point. Therefore, this is a case of first impression before the court.

It is the association's position that the defendant had notice that lots 84 and 85 were separate and distinct lots at the time he purchased the lots. The association points to the deed, the declaration of restrictive covenants and its own bylaws to assert that the duty to pay the assessment

fees attaches at the time of purchase on a per lot basis. The defendant's brief makes a bare allegation that the combination of two lots into one lot gives him title to one lot and therefore, he should pay one fee. The defendant attempts to find ambiguities in the declaration of restrictive covenants in order that the court may apply general rules of construction applicable to restrictive covenants.

Deed provisions requiring the payment of fees or assessments which do not restrict or regulate a lot owner's property cannot be considered restrictive covenants. *Birchwood Lakes Community Association v. Comis,* 296 Pa. Super. 77, 83, 442 A.2d 304, 307 (1982). In *Birchwood,* the court found that a deed provision requiring payment of dues in order to support services necessary for the maintenance of the community was not a restrictive covenant. *Id.* The issue in that case was whether the association could assess dues at an amount higher than that permitted by the deed.

The provisions at issue in this case are similar to the one in *Birchwood,* in that the assessment fees are imposed for the maintenance of community property. Although the document is entitled "declaration of restrictive covenants," the association's covenant provisions at issue do not restrict or regulate the lot owner's property and therefore are not restrictive covenants. *Id.* As such, the court will apply the rules of construction pertaining to *nonrestrictive covenants.*

None of the relevant documents contain any provisions pertaining to the combination of lots into one lot or the

effect of such action upon the assessment fee. The *Birchwood* court noted the general rules of construction for non-restrictive covenants. Citing *Leh v. Burke,* 231 Pa. Super. 98, 104, 331 A.2d 755, 759, (1974), the court stated,

"The rule is that if an agreement is not clearly expressed, an effort is made by the court interpreting the language to give effect to the intention of the parties as expressed at the time. 'Where the language of a deed or a restriction is not clear, then in order to ascertain the intention of the parties its language should be interpreted in light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made.' *Parker v. Hough,* 420 Pa. 7, 12-13, 215 A.2d 667, 670 (1966)." *Birchwood, supra* at 83-84, 442 A.2d at 307.

The defendant lot owner asserts that the deed and accompanying declaration of restrictive covenants are vague in that there are no provisions concerning the effect of the combination of two lots into one lot. The court disagrees and finds that the language of the deed, the covenants, and the bylaws of Fawn Lake Forest Association requires the assessment of fees on a per lot basis, not a per owner basis. While the effect of the combination of lots upon the levying of an assessment fee is not clearly expressed, the relevant documents are clear as to the procedure for determining the number of lots owned by an owner and the consequent fee due.

By the time his deed was filed on February 20, 1990, the defendant had notice that lots 84 and 85 were separate

and distinct lots. The defendant's deed itself identifies the two lots as separate and distinct. The original plat map recorded November 17, 1970, referred to in the defendant's deed, also depicts lots 84 and 85 as separate and distinct lots. The bylaws of the association define a "Fawn Lake Forest Lot" as "any of the approximately 2,074 lots shown on the 11 plats comprising the Fawn Lake Forest Subdivision ... ." The defendant does not question that there were two lots at the time he purchased lots 84 and 85. Defendant asserts that his legal combination of the two lots into one requires him to pay only one assessment fee.

It was the intention of the parties at the time that the agreement was made to provide for the maintenance of the community through the assessment of fees upon the lot owners based upon the number of lots owned. Section V, paragraph 3 of the restrictive covenants states the purpose behind the requirement of assessment fees. Under that provision, fees and dues are imposed "for the maintenance and improvement of common properties, private streets and roads and for the general upkeep, maintenance, management, operation, payment of taxes and insurance and general welfare of the community and the association."

The covenants grant the association the power to impose dues and assessments on each lot. Implicit in the language of the covenants is the requirement that each owner pay a pro rata share based on the number of lots owned. Analysis of the deed, the original plat map, the declaration of covenants, and the bylaws of the association shows that the number of lots owned by the owner is determined at the time of the purchase of the lot or lots. Thus, the combination of two lots

into one, under the authority of a different entity, and at a time after the date of the purchase of the lots, does not change the number of lots owned by the owner for the purposes of levying an assessment.

The introduction of the declaration of restrictive covenants states that such covenants apply to the specific lots identified therein. Thus, the covenants are set up so as to run with the land contained in each lot. The language of the covenants necessarily implies that the provisions are to be applied on a per lot basis. Furthermore, the bylaws of the association define "covenants" as "the property reservations, covenants, conditions, easements and restrictions impressed on and *running with the Fawn Lake Forest lots* as set forth in the declaration of restrictive covenants . . . ."

The covenants anticipated that one owner may own more than one lot. The rights and duties of the owners under the covenants are divided on a per lot basis. Where an owner owns more than one lot, the owner is given rights and duties under each lot which attach at the time he purchases the lots. Section I, paragraph 5 of the covenants defines "owner." An owner "shall mean and refer to any person or entity who purchases or otherwise acquires title to any lot subjected to these covenants . . . ."

Section IV of the covenants sets forth the rights and benefits of owners. Under paragraph 1, the owner of each lot is made a member of the association and given voting privileges. Paragraph 1 states that "[a]ll voting privileges shall be on a lot unit basis with one vote allocated to each lot in the properties, to be cast as the owner or owners thereof determine."

Paragraph 3 of section IV states that "[e]very owner of a lot or lots in the properties shall have a private right of use, enjoyment and occupancy in all common properties and in all private roads, streets, ways and easements which shall be held and used in common with all other owners and with developer . . . ."

Section V of the covenants sets forth the duty of owners to pay maintenance fees, water charges and other assessments. Paragraph 1 of section V states, "[t]here is hereby imposed upon *every lot* in the properties and upon every owner thereof the fees, water charges and other assessments specified or otherwise provided for in this article IV *the obligation and liability for payment of each which shall arise at the time of the sale of every lot by developer to any owner* whether by installment, payment agreement, by deed or otherwise irrespective of whether or not such obligations are expressed in such agreements or deeds. By acceptance of such agreement or deed or by otherwise acquiring *a lot* in the properties every owner agrees to pay all such fees, water charges and assessments specified or otherwise provided for in this article." (emphases added)

One Pennsylvania court has stated that "[w]hen ownership of property within a residential community allows the owners to utilize roads and other common areas of development, there is an implied agreement to accept the proportionate costs for maintaining and repairing these facilities." *Meadow Run and Mountain Lake Park Association v. Berkel,* 409 Pa. Super. 637, 640, 598 A.2d

1024, 1026 (1991), *alloc. denied,* 530 Pa. 666, 610 A.2d 46 (1992), citing *Sea Gate Association v. Fleischer,* 211 N.Y.S.2d 767 (1960). The covenants at issue here demand that the proportionate costs of maintaining the facilities be assumed by the owners on a per lot basis.

The defendant's deed states that the purchase of lots 84 and 85 is "UNDER AND SUBJECT, nevertheless, to the conditions and restrictions as appear of record." When lots 84 and 85 appeared on the recorded plat map in November 1970, each lot became subject to the declaration of restrictive covenants which had been recorded July 16, 1969. Under the defendant's deed, his obligation to pay the assessment fee is governed by the declaration of covenants. These covenants were set up so as to run with each lot.

Under the introduction and section V, paragraph 1 of the recorded declaration of restrictive covenants, a lot owner's duty to pay assessment fees on a lot runs with the land in that lot for 90 years from 1969. Under section V, paragraph 1 of the declaration, defendant's duty to pay the assessment fee attached at the time he purchased the lots. Defendant's combination of lots 84 and 85 into one lot in 1988, approximately 18 years after the recordation of the plat map and the declaration of restrictive covenants, cannot change the defendant's running obligation to pay assessment fees on both lots.

As a nonprofit corporation, the association has the power under Pennsylvania's Nonprofit Corporation Law to impose dues and assessments in a discretionary fashion. 15 Pa.C.S. §5544(a) of that law states that:

"A nonprofit corporation may levy dues or assessments, or both, on its members, if authority to do so is conferred by the bylaws, subject to any limitations therein contained. Such dues or assessments, or both, may be imposed upon all members of the same class either alike or in different amounts or proportions, and upon a different basis upon different classes of members. Members of one or more classes may be made exempt from either dues or assessments, or both, in the manner or to the extent provided in the bylaws."

In article II, section 14 of its bylaws, the association asserts its right to levy dues and assessments. The Nonprofit Corporation Law gives the association the discretion to determine whether or not to impose different assessments on different classes of members or to completely exempt a certain class from the payment of dues. The Nonprofit Corporation Law states that the association *may* in its bylaws, exempt a class of owners from the payment of dues. See 15 Pa.C.S. §5544(a), *supra.* Here, the bylaws of the association do not contain a provision exempting an owner from paying assessment fees on two lots when he has combined the two lots into one. In the absence of such a provision, the defendant must pay the assessment fee on each lot.

The fact that the defendant received a reduction in the assessed valuation of lots 84 and 85 after he combined the lots has no bearing on the manner in which the association may impose dues and assessments upon the lots. It is important to note that the board of assessments did not exempt the defendant from paying taxes, but only reduced the assessed valuation.

The board of assessment's determination to reduce the assessed valuation does not affect the association's power to levy assessments on each lot. The board of assessment and the association are separate entities governed by different rules. The board of assessment is governed by the County Assessment Law, while the association is governed by the Nonprofit Corporation Law, and its own bylaws which incorporate the declaration of restrictive covenants. While the board of assessment has the authority to reduce the assessed valuation of the property, it is the association which has the power to impose dues and assessments on a per lot basis.

The defendant's only remedy appears to be through the amendment of the association's bylaws. Article VII, section 1 permits the amendment of the bylaws "by the members holding a majority of the existing unit votes entitled to vote thereon."

We hold, therefore, that the combination of two lots into one lot under the authorization of a township board of supervisors for assessment purposes does not exempt the owner of the lots from paying dues and assessment fees imposed on both of the lots by an association with authority to do so under its declaration of restrictive covenants which are referenced in the deed and the association's bylaws.

## Waiver

Since we have determined that the defendant must pay fees on both lots 84 and 85, we need not decide the issue raised in the association's brief as to whether the

defendant's payment of fees on lot 84 constitutes a waiver of his exemption argument.

### Attorney's Fees

Under *Wrenfield Homeowners Association v. De-Young,* 410 Pa. Super. 621, 600 A.2d 960 (1991), the court is authorized to include an award of attorney's fees in favor of the association. In *Wrenfield,* the court allowed an association to recover attorney's fees where the declaration of covenants permitted the imposition of such fees in a collection action. *Id.* at 627-28, 600 A.2d at 963.

Section V, paragraph 6 of Fawn Lake Forest Association's declaration of restrictive covenants, permits the association to recover "all reasonable collection costs including attorney's fees." Since the association has agreed to pay its counsel attorney's fees in the amount of 1/4 of the judgment amount, the association is entitled to an award of attorney's fees in that amount.

### ORDER

And now, April 3, 1995, upon consideration of stipulated facts, and briefs filed by the parties hereto, and for the reasons set forth in our opinion, *supra,* it is ordered and decreed that the defendant, Ronald Tussel, trustee of the Arthur C. Kujawski Irrevocable Trust, pay the delinquent assessment fees due on lots 84 and 85 of section VIII, and lot 101 of section I, in Fawn Lake Forest, to the Fawn Lake Forest Association Inc., together with all reasonable collection costs, including attorney's fees amounting to 1/4 of the judgment amount.