## Chapski v. The Moravian at Independence Square Condominium Association

*Robert D. Greenbaum,* for plaintiffs.
*Michael N. Onufrak,* for defendants.

SHEPPARD JR., *J.,* November 30, 2007—Presently before the court are defendants' preliminary objections seeking dismissal of the instant action. For the reasons discussed, the preliminary objections are sustained, in part, as they pertain to plaintiffs' fraud, conversion, RICO and attorneys' fees claims. Defendants' remaining preliminary objections are denied.

## BACKGROUND

Plaintiffs, Jeffrey Chapski and Jennifer M. Lee are husband and wife, residing at 143 S. 2nd Street, Apt. #204, Philadelphia, PA 19106 (Unit 204). Defendants include: The Moravian at Independence Square Condominium Association,[1] Moravian Associates L.L.C., Moravian Associates L.P., Renaissance Properties Inc., Renaissance Development Real Estate Services L.L.C.,

---

1. The association is a Pennsylvania non-profit (non-stock) corporation that operates 17 residential condominium units (including Unit 204 involved in this suit) and one apartment unit (comprised of eight rental apartments).

Renaissance Properties Real Estate Service L.L.C., and Travelers Property Casualty Company of America.[2]

This action stems from various interactions between plaintiffs and defendants concerning Unit 204. The complaint alleges, among other things, that plaintiffs were defrauded in the purchase of Unit 204 by all of the above-mentioned defendants acting in unison,[3] as the property failed to conform to the pre-sale representations.

On December 19, 2005, after about a month of negotiations,[4] plaintiffs entered into an agreement of sale with Moravian L.P. for the purchase of Unit 204 at a price of $1,165,000. As part of the agreement, Unit 204 was to be conveyed to the plaintiffs free and clear of all monetary liens[5] and latent defects.

By deed dated March 28, 2006, Moravian L.P. conveyed the property to the plaintiffs. Unbeknownst to the

---

2. Travelers is a Connecticut corporation authorized to conduct business and licensed to sell insurance in the Commonwealth of Pennsylvania and has a principal place of business in Hartford, CT.

3. With the exception of Travelers, the defendants are all Pennsylvania entities that share the same business address: c/o Renaissance Development Real Estate Service LLC, 1926 Arch Street, Suite 4R, Philadelphia, PA 19103. It is alleged in the complaint that Renaissance Development is the majority member of Moravian LLC, which is the general partner in a limited partnership with Moravian L.P.

4. In November 2005, the plaintiffs began negotiations with Moravian L.P. for the purchase of Unit 204. Plaintiffs discussed the purchase with Edward W. Coslett of Moravian LLC numerous times via phone, fax, and email. Such communications involved the sale, construction, and repair issues.

5. Section 4(b) of the purchase agreement states: "Seller shall discharge all monetary liens against the premises on or before settlement hereunder."

plaintiffs at the time, Unit 204 was subject to a mortgage.[6] Defendants are alleged to have been aware of this fact prior, during, and after the sale.

On February 10, 2007 at approximately 4 p.m., a pipe abutting the exterior building wall of Unit 204 ruptured causing plaintiffs' property to sustain significant water damage to the kitchen, living room, study on the second floor, master bedroom and bathroom on the first floor, and various hallways.

In response to this incident, plaintiffs communicated with defendants through phone, fax and email regarding the damage sustained and the plans for repair. Plaintiffs allege that defendants refused to diligently pursue the repair of Unit 204, which prompted plaintiffs to engage their own public adjustor and contractor to assess the damage and perform the demolition of the damage and reconstruction, respectively.

In performing the demolition work, plaintiffs' contractor discovered numerous defects with Unit 204 including: improper installation of the fire system pipe, insufficient insulation of the fire system pipe, insufficient insulation of the exterior wall(s), improper penetrations of the interior and exterior wall(s) and floor, improper venting of plumbing systems, and a rotting roof. Plaintiffs allege that these construction defects are latent defects under the purchase agreement, and therefore the property does

6. The Henderson Corporation was the original general contractor employed to develop the condominiums. In April 2005, Henderson filed suit against Moravian L.P. et al, for failure to pay $3.7 million in fees owed them for the development. As part of a settlement agreement, the suit was dropped and Henderson recorded a mortgage against the condominiums in October 2005.

not conform to the provisions of said agreement. Also, plaintiffs claim that defendants had a responsibility to repair and correct the construction defects as well as assure that all such renovation and construction work performed on Unit 204 conformed to all applicable building codes.

As part of the negotiations for purchase of Unit 204, defendants represented that all owners of condominium units would be governed by the declaration, bylaws and related documents of the association (governing documents). These documents state that Moravian L.P. is entitled to all three seats on the association's executive board until 60 days after Moravian L.P. has conveyed 25 percent of the units, at which time the unit owners other than Moravian L.P. would be entitled to elect one member of the executive board. All of the members of the executive board are to be elected by the unit owners, including Moravian L.P. to the extent Moravian L.P. continues to own any units, not later than the earlier of September 9, 2009 or 120 days after Moravian L.P. has conveyed 75 percent of the units. Plaintiffs allege that the apartment unit[7] and 13 residential units, including Unit 204, have been sold thus triggering the requirement for the election of the executive board by all the unit owners. No such election has been held to date.

Plaintiffs also claim that defendants have failed to fulfill other obligations under the governing documents, including failure: to provide accounting records, to prepare timely and disclose annual and capital budgets, to make the repairs resulting from faulty common elements

---

7. This unit consists of eight apartments fronting on Walnut Street.

in a timely fashion, to have its insurance company pay for repairs made necessary by the construction defects and the fire system pipe rupture, and to collect all association fees from all members of the association.

On July 31, 2007, plaintiffs brought the underlying action alleging fraud, breach of contract, violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), conversion, bad faith and unjust enrichment. Plaintiffs also ask for rescission of the original purchase agreement.

Defendants now ask the court to dismiss the complaint for: legal insufficiency, factual insufficiency and failure to join an indispensable party.

## DISCUSSION

The court's role is limited in reviewing preliminary objections. "All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review." [8] "The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." [9] Any doubts as to whether a demurrer should be sustained, shall be resolved in favor of overruling it.[10] "In ruling on preliminary objections, the focus of the inquiry is the pleadings as a court must sustain preliminary objections only where it is clear and free from doubt from all the facts pleaded that the

8. *Employers Insurance of Wausau, A Mutual Company v. PennDOT,* 581 Pa. 381, 388 n.5, 865 A.2d 825, 829 n.5 (2005).

9. *Id.*

10. *Id.*

pleader will be unable to prove facts legally sufficient to establish [its] right to relief." [11]

## I. *The Henderson Corporation Is Not an Indispensable Party*

"In Pennsylvania, an indispensable party is one whose rights are *so directly connected* with, and affected by, litigation that he must be a party of record to protect such rights, . . . ." [12] "The determination of indispensability requires consideration of the following: (1) whether the absent party has a right or interest related to the claim, (2) the nature of that right or interest, (3) is the right or interest essential to the merits of the issue and (4) can justice be afforded without violating the due process rights of absent parties." [13]

The present action is a breach of contract case between plaintiffs and defendants solely. The Henderson Corporation is not a party to the contracts at issue and therefore does not have a right or interest in this claim. [14] Because subject-matter jurisdiction can be objected to at any time, defendants will still have an opportunity to address this issue if it appears during the course of discovery that Henderson is an indispensable party to this action. The court overrules this preliminary objection.

---

11. *DeStefano & Associates v. Cohen,* 2002 Phila. C.C.P. Lexis 54, *8 (2002).

12. *Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 483, 431 A.2d 953, 957 (1981). (emphasis in original)

13. *Kvaerner U.S. Inc. v. OneBeacon Insurance Co.,* 2003 Phila. C.C.P. Lexis 43, *3 (2003).

14. The Henderson Corporation completed construction on the property well before plaintiffs entered into negotiations concerning Unit 204.

## II. *Counts I and V Are Dismissed Pursuant to the "Gist of the Action" Doctrine*

"The gist of the action doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." [15] Specifically, the doctrine bars "tort claims that: (1) arise solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; and (4) where the tort essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." [16]

Plaintiffs' entire case surrounds the contractual agreement with the defendants for the purchase of Unit 204. Though plaintiffs, in theory, plead separate causes of action in Counts I (fraud) and II (breach of contract), upon closer examination, the factual allegations in support of both claims are identical. Because the duties allegedly breached in both causes of action stem from the purchase agreement, the breach of contract claim is the only viable claim under the "gist of the action" doctrine. Therefore, Count I (fraud) is dismissed. [17]

Similarly, plaintiffs' success on its conversion claim depends entirely on the obligations of the parties as defined in the contractual agreement. Therefore, the breach

---

15. *City of Philadelphia v. Human Services Consultants,* 2004 Phila. C.C.P. Lexis 26, *6 (2004).

16. *Id.* at *7.

17. Defendants' remaining preliminary objections that relate to Count I (fraud) concerning: specificity of fraud, failure to allege duty to disclose and failure to establish alter-ego liability, are moot and need not be addressed.

of contract claim and conversion claim are inextricably intertwined. Because the conversion claim in Count V is duplicative to the Count II breach of contract claim, the court dismisses Count V pursuant to the "gist of the action" doctrine.[18]

### III. *Plaintiffs Have Failed To Allege an Adequate RICO Claim in Count IV*

"The allegations necessary to support a RICO claim by a private plaintiff under 18 U.S.C. §1962 are (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity, and (5) injury to the plaintiff's business or property." [19] Defendants argue that the "pattern" aspect of a civil RICO claim has not been adequately supported in the complaint.

A pattern "requires the showing of a relationship between the predicates[20] and of the threat of continuing activity." [21] "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering

---

18. The doctrine bars "tort claims that: (1) arise solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; and (4) where the tort essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." *City of Philadelphia,* 2004 Phila. C.C.P. Lexis at *7.

19. *Alberici v. United States Government Department of Justice,* 1992 U.S. Dist. Lexis 3334, *16 (Pa. Dist. Ct. 1992).

20. The predicate offenses are listed in 18 U.S.C. §1961(a)(1). The predicate offenses alleged by plaintiffs include fraud by wire (ex: use of fax, email, phone), as defined under 18 U.S.C. §1343.

21. *H. J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989).

predicates are related, *and* that they amount to or pose a threat of continued criminal activity."[22] Therefore, the "pattern" element includes two prongs: relatedness of predicate acts and continuity. "Continuity . . . refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'"[23] Having reviewed the allegations in plaintiffs' complaint, the court finds that continuity has not been alleged.

Plaintiffs argue that defendants' fraud has spanned over four years and therefore "closed-period" continuity has been demonstrated. The court disagrees. Plaintiffs began negotiations in December 2005 and were conveyed the property in March 2006. The alleged fraud occurred within that time period, which amounts to approximately four months. This fails to constitute "a substantial period of time" under the RICO statute.[24]

Plaintiffs also allege an open-ended pattern of racketeering, one that is threatening criminal activity into the future. Again, the court disagrees. "While any threat of continuity is by its nature hypothetical, to infer a threat of repeated fraud from a single alleged scheme would in

---

22. *Id.* (emphasis in original)

23. *Menasco Inc. v. Wasserman,* 886 F.2d 681, 683 (4th Cir. 1989).

24. "A close-ended pattern of racketeering refers to a series of related predicate acts extending over a substantial period of time concluded by the time the RICO action is brought. Predicate acts extending over a few weeks or months and threatening no future conduct do not satisfy [the continuity] requirement: Congress with RICO was concerned with long-term criminal conduct." *Alter v. DBLKM Inc.,* 840 F. Supp. 799, 809 (D. Colo. 1993).

effect render the pattern requirement meaningless."[25] Plaintiffs' fraud allegations surround only one particular transaction. Plaintiffs have failed to adequately allege an ongoing scheme. The mere assertion that some of defendants' condominiums have remained unsold fails to establish a threat of future criminal activity.

In sum, the court finds that plaintiffs have failed to establish the "pattern" element of a civil RICO claim, and thus Count IV must be dismissed.

### IV. *Plaintiffs Have Alleged a Claim for Unjust Enrichment in Count VII*

The elements of unjust enrichment include: "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[26] The complaint properly alleges these three elements.[27]

The defendants argue that because the cause of action is based upon a written contract, a quasi-contractual scenario does not exist and therefore an unjust enrichment claim must fail. Though it is true that a plaintiff cannot recover on an unjust enrichment claim that is based upon a breach of a written contract,[28] Pennsylvania

25. *Continental Realty Corp. v. J.C. Penney Co.,* 729 F. Supp. 1452, 1455 (D. N.Y. 1990).

26. *Schenck v. K.E. David Ltd.,* 446 Pa. Super. 94, 97, 666 A.2d 327, 328 (1995).

27. See complaint ¶¶216-21.

28. *Birchwood Lakes Community Association v. Comis.,* 296 Pa. Super. 77, 87, 442 A.2d 304, 308 (1982).

Civil Procedure Rule 1020 allows a plaintiff to plead causes of action in the alternative. It is also established that "[p]laintiffs may properly plead causes of action for breach of contract and unjust enrichment in the same complaint."[29] The court finds that plaintiffs have adequately done so and therefore overrule defendants' preliminary objection pertaining to this claim.

### V. *Plaintiffs' Claim for Attorneys' Fees Pursuant to Count III Are Permitted*

The Supreme Court of Pennsylvania has consistently followed the American Rule, and under this rule, "there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception."[30] Because attorneys' fees are permitted under 73 P.S. §201-9.2(a), the court overrules defendants' preliminary objection pertaining to Count III (violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law) and such fees are permitted. The remaining claims for fees are dismissed.[31]

---

29. *Honeywell International Inc. v. Archdiocese of Phila.*, 2001 Phila. C.C.P. Lexis 40, *4 (2001).

30. *Merlino v. Delaware County*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999).

31. The court need not address plaintiffs' claims for attorneys' fees related to Counts I (fraud), IV (RICO), and V (conversion) because they have already been dismissed. The court also rejects plaintiffs' claim for attorneys' fees associated with Count II (breach of contract) because the contract does not call for such fees. For Counts VII (unjust enrichment) and VIII (rescission), the court notes plaintiffs' failure to allege any statutory authorization or exception that would permit attorneys' fees. Therefore, such fees are denied.

## CONCLUSION

For these reasons, defendants' preliminary objections are sustained, in part, as to Counts I (fraud), IV (RICO), V (conversion), and plaintiffs' claim for attorneys' fees in Counts I, II, IV, V, VII, and VIII are stricken. The remaining preliminary objections are overruled.[32]

## ORDER

And now, November 30, 2007, upon consideration of the preliminary objections to plaintiffs' complaint, the response in opposition, all other matters of record, and in accord with the opinion issued contemporaneously, it is ordered that said preliminary objections are sustained, in part, as they pertain to plaintiffs' fraud, conversion, RICO, and attorneys' fees claims. Defendants remaining preliminary objections are denied.

---

32. Count II properly alleges breaches of contract by defendants. The complaint alleges the breach of two contracts: purchase of sale agreement and agreements contained within the "governing documents." Though the court is hesitant to find alter-ego liability from the scant factual allegations within the complaint, it does agree that discovery is needed to address this issue. Therefore, the court overrules defendants' preliminary objection and all defendants, absent Travelers, remain as parties to the contracts at issue.